2007-NMSC-024

160 P.3d 886

**STATE of New Mexico, Plaintiff–
Petitioner and Cross–
Respondent,**

v.

**Mark Joseph LIZZOL, Defendant–
Respondent and Cross–
Petitioner.**

No. 30,019.

Supreme Court of New Mexico.

May 18, 2007.

Gary K. King, Attorney General, Jacqueline R. Medina, Assistant Attorney General, Santa Fe, NM, for Petitioner and Cross–Respondent.

John Bigelow, Chief Public Defender, Linda Yen, Assistant Appellate Defender, Santa Fe, NM, for Respondent and Cross–Petitioner.

## OPINION

CHÁVEZ, Chief Justice.

{1} This case presents us with an opportunity to clarify whether the State may appeal the dismissal of a case based on a judge's decision to exclude evidence for lack of foundation. We hold that double jeopardy principles do not allow the State to appeal in such circumstances. Because of our holding, we do not reach the issue of whether the judge's evidentiary ruling in this case was in error.

## I. BACKGROUND

{2} In the early morning of January 17, 2004, Officer Tanner Tixier of the Albuquerque Police Department pulled over Defendant Mark Lizzol for driving without taillights. Observing signs of intoxication, Officer Tixier asked Lizzol if he had been drinking. Lizzol replied that he had drunk a few beers. Officer Tixier conducted field sobriety tests on Lizzol and, based on his performance, arrested Lizzol. Lizzol was given a breath-alcohol-test (BAT) after being taken to the Prisoner Transport Center and read the Implied Consent Act. As a result of the BAT, Officer Tixier booked Lizzol and filed a criminal complaint in the Bernalillo County Metropolitan Court charging Lizzol with driving under the influence of intoxicating liquor (DUI), *see* NMSA 1978, § 66–8–102 (2003, prior to amendments through 2005), and driving with faulty equipment, *see* NMSA 1978, § 66–3–801 (1991).

{3} Trial began on August 30, 2004. In laying the foundation for the admission of the BAT card, Officer Tixier testified that the testing machine was certified by the Scientific Laboratory Division of the Department of Health (SLD). When asked by the prosecutor how he knew the machine was certified, Officer Tixier replied: "There's a small certificate that is posted on the machine itself, stating that that part—." At this point, defense counsel objected, claiming "hearsay,

not best evidence and no foundation." Stating that Officer Tixier's testimony was foundational evidence, the judge overruled the objection.

{4} Later, when the State moved for the admission of the BAT card, defense counsel again objected. The judge expressed his concern that, to lay proper foundation, *Garza v. State Taxation & Revenue Dep't*, 2004–NMCA–061, 135 N.M. 673, 92 P.3d 685, required testimony from an officer with more knowledge about the certification process than Officer Tixier had. After much discussion between the judge and the parties, one of the prosecutors declared: "Rule one way or the other, your Honor, and we'll brief it. One of us will take an appeal." The prosecutor urged the judge to "[f]lip a coin" to decide. At this point, the judge expressed his desire to see the issue go up on an interlocutory appeal, however, the parties informed him that this was impossible. Finally, the prosecutor requested "a final order . . . that even though Tixier is certified by SLD, that you find that . . . he's not . . . [an] appropriately qualified witness. We'll appeal it." The judge replied:

> Yeah, because I'd sure like to find the answer to that. And I'm not saying I necessarily believe it one way or another. I'm just saying right now, it's too close to call. And if it's going to be that way, I'm going to find reasonable doubt in all of this stuff.
>
> So I'll go ahead and find that—that the officer in this case was not the proper person to be appropriately—the appropriately qualified witness by certification. And as such, I'll suppress the breath test.

The judge further stated: "I'll get a final order out. As such, I'm going to find that I had reasonable doubt in the case. . . ." After ensuring that the State was resting its case, the judge continued: "So I find that I have reasonable doubt based on that. And as such, would find the Defendant not guilty at this point, and then we'll just leave it as such." On the written order entered the next day was the following:

> BY THE ORDER OF THIS COURT: The breath card is suppressed because the officer is found not to be "A qualified individu-

al" to testify to the certification of the breath machine under [*Garza*], the case is therefore dismissed.

{5} The State appealed to the Second Judicial District Court. *See* NMSA 1978, § 34–8A–6(C) (1993). Concluding that the judge abused his discretion in not admitting the BAT card, the district court reversed the metropolitan court and remanded the case for trial. Lizzol appealed to the Court of Appeals raising, among other issues, the question of whether double jeopardy principles barred the State from appealing the case to the district court. *See State v. Lizzol*, No. 25,794, 2006–NMCA–130, 141 N.M. 721, 160 P.3d 902, 2006 WL 3001105 (Aug. 28, 2006). The Court of Appeals concluded that our opinion in *County of Los Alamos v. Tapia*, 109 N.M. 736, 790 P.2d 1017 (1990), allowed the State to appeal a trial court's incorrect exclusion of evidence when the trial court was confused about what was required by law to establish foundation. Thus, the court held that double jeopardy did not bar the State from appealing the metropolitan court's evidentiary ruling.[1] *Lizzol*, 2006–NMCA–130, ¶ 29.

{6} However, the Court of Appeals thought it "vexing" that we held in *Tapia* that the State could appeal a trial court's ruling on an evidentiary matter. *Id.* ¶ 28, 790 P.2d 1017. The court noted that in *Tapia* we quoted *Burks v. United States*, 437 U.S. 1, 15, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), in holding that the "incorrect receipt or rejection of evidence" was "trial error" that could be appealed by the State, yet *Burks* was a case where the *defendant* was appealing, not the government. *Lizzol*, 2006–NMCA–130, ¶ 28; *see also Tapia*, 109 N.M. at 740, 790 P.2d at 1021 (discussing *Burks* and its progeny). The Court of Appeals implied that it preferred to hold that the State was barred from appealing in this case, but that it found itself bound by our prece-

dent set by *Tapia*. *See Lizzol*, 2006–NMCA–130, ¶ 28. In light of the Court of Appeals's concern, we take this opportunity to review *Tapia* and our double jeopardy jurisprudence in the context of the State appealing a trial court ruling. In doing so, we limit *Tapia* to the extent that it suggests the State may appeal a trial court's erroneous evidentiary ruling. Because we hold that double jeopardy principles bar the State from appealing this case, we do not reach the issue of whether the metropolitan court judge made an erroneous evidentiary ruling in Lizzol's case.[2]

## II. DISCUSSION

### A. When a Trial Court Makes an Evidentiary Ruling and Concludes That the Evidence Is Insufficient to Proceed Against the Defendant, the Defendant Is Acquitted and the State May Not Appeal

■ {7} "Perhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that a verdict of acquittal ... [cannot] be reviewed, on error or otherwise, without putting a defendant twice in jeopardy, and thereby violating the Constitution." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977) (quoted authority and alterations omitted). This rule is so fundamental that an appellate court may not review an acquittal even if it was based on an "egregiously erroneous foundation." *Fong Foo v. United States*, 369 U.S. 141, 143, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962) (per curiam). Thus, the critical issue in this case is whether the trial court's ruling was an acquittal. The State argues that what matters is not the trial court's oral statements concerning Lizzol's guilt, but its final written order and its clear intent that its ruling be appealed. Our review of binding United States Supreme

---

1. The Court of Appeals went on to reverse the district court's determination that the metropolitan court judge had abused his discretion in excluding the BAT card. *Lizzol*, 2006–NMCA–130, ¶¶ 39–41. On December 8, 2006, we entered an order withdrawing publication and holding the case in abeyance until our final resolution of the matter. Order, No. 30,019, N.M. B. Bull., Jan. 1, 2007, at 13.

2. Today, we also file *State v. Martinez*, No. 30,-122, 141 N.M. 713, 160 P.3d 894, 2007-NMSC-025, 2007 WL 1742195 (N.M. filed May 18, 2007), where we resolve the evidentiary issue that we do not reach in this case.

Court precedent convinces us that the State is wrong. What matters is not the words of the trial court—either written or oral, nor the trial court's intent that the case be appealed. Instead, whether a defendant was acquitted depends on whether the trial court's ruling, however labeled, correctly or incorrectly resolved some or all of the factual elements of the crime.

{8} In *United States v. Sisson*, the defendant went to trial for refusing to be inducted into the military. *See* 399 U.S. 267, 271, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970). After trial, claiming that the district court lacked jurisdiction, the defendant moved the court "to arrest the judgment." *Id.* at 276, 90 S.Ct. 2117. Although the district court granted the motion, it did not rule on the jurisdictional argument. *Id.* at 277, 90 S.Ct. 2117. Instead, after concluding that it was convinced of the defendant's sincerity, the district court held that the defendant could not constitutionally be compelled to serve in the Vietnam war. *Id.* at 277–78, 90 S.Ct. 2117. The government appealed under a statutory provision allowing it to appeal from decisions arresting judgment.[3] *Id.* at 279, 90 S.Ct. 2117. Notwithstanding the district court's characterization of its ruling as an arrest of judgment, the United States Supreme Court held that the ruling was an acquittal since it was "made on the basis of evidence adduced at the trial." *Id.* at 288, 90 S.Ct. 2117. Thus, the Court dismissed the appeal because it lacked jurisdiction to hear it. *Id.* at 308, 90 S.Ct. 2117.

{9} Citing *Sisson*, the United States Supreme Court held in *Martin Linen Supply Co.* "that what constitutes an 'acquittal' is not to be controlled by the form of the judge's action." 430 U.S. at 571, 97 S.Ct. 1349. Instead, the Supreme Court stated that the question is "whether the ruling of the judge, *whatever its label*, actually represents a resolution, *correct or not*, of some or all of the factual elements of the offense charged." *Id.* (emphasis added).

{10} The following term the United States Supreme Court published three cases on the same day: (1) *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978), (2) *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), and (3) *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). In both *Sanabria* and *Scott*, the Supreme Court considered whether the Double Jeopardy Clause barred *the government's appeal* from a trial court's ruling in the defendant's favor. Thus, as in the instant case, *Sanabria* and *Scott* dealt with the issue of whether the trial court's ruling constituted an acquittal. Since *Sanabria* and *Scott* came to opposite conclusions, these two cases give concrete guidance on how to determine whether a trial court's ruling is an "acquittal" as defined by *Martin Linen Supply Co.* In *Burks*, however, the acquittal issue was not at all present. The issue there was whether the Double Jeopardy Clause barred the defendant's *retrial* after he successfully appealed his conviction. *Burks* merely clarifies that when *a defendant* challenges his or her conviction on grounds other than sufficiency of the evidence, the Double Jeopardy Clause does not bar a retrial.

{11} In *Sanabria*, the trial court excluded governmental evidence after erroneously concluding that the evidence was not relevant to the defendant's indictment. *See* 437 U.S. at 58–59, 98 S.Ct. 2170. The court then granted the defendant's motion for a judgment of acquittal, entering an order to that effect later that day. *Id.* at 59, 98 S.Ct. 2170. On appeal, the Court of Appeals for the First Circuit reversed the trial court, holding that its ruling was, in effect, a dismissal of the indictment. *Id.* at 61–62, 98 S.Ct. 2170. The United States Supreme Court disagreed: "[W]e believe the ruling below is properly to be characterized as an erroneous evidentiary ruling, which led to an acquittal for insufficient evidence. That judgment of acquittal, however erroneous, bars further prosecution on any aspect of the count and hence *bars*

---

**3.** The statute allowed the government to appeal "[f]rom a decision arresting a judgment of conviction for insufficiency of the indictment or information, where such decision [was] based upon the invalidity or construction of the statute upon

which the indictment or information [was] founded." Act of June 25, 1948, ch. 645, § 3731, 62 Stat. 844–45 (codified as amended at 18 U.S.C. § 3731 (2000)).

*appellate review* of the trial court's error." *Id.* at 68–69, 98 S.Ct. 2170 (emphasis added) (footnote omitted). Importantly, the Supreme Court stated:

> To hold that a defendant waives his double jeopardy protection whenever a *trial court error in his favor* on a midtrial motion leads to an acquittal would undercut the adversary assumption on which our system of criminal justice rests, and would vitiate one of the fundamental rights established by the Fifth Amendment.

*Id.* at 78, 98 S.Ct. 2170 (emphasis added) (citation omitted).

 {12} In *Scott,* after the close of evidence the trial court granted the defendant's earlier motion to dismiss based on prejudice resulting from pre-indictment delay. 437 U.S. at 84, 98 S.Ct. 2187. The United States Supreme Court held that the defendant was not acquitted for purposes of double jeopardy. *See id.* at 100–01, 98 S.Ct. 2187. In doing so, the Court discussed the two times the government may appeal a trial court's ruling in the defendant's favor: (1) when the trial court declares a mistrial, and (2) when "the trial judge terminates the proceedings ... on a basis not related to factual guilt or innocence." *See Id.* at 92–93, 101, 98 S.Ct. 2187. After reiterating that "the trial judge's characterization of his own action cannot control the classification of the action," *id.* at 96, 98 S.Ct. 2187 (quoted authority omitted), the Court clarified which rulings are to be considered acquittals and which are not. Rulings in a defendant's favor based on factual findings "result[ing] from *erroneous evidentiary rulings* or erroneous interpretations of governing legal principles" are acquittals. *See id.* at 98, 98 S.Ct. 2187 (quoted authority omitted) (emphasis added). "[L]egal judgment[s] that a defendant, although criminally culpable, may not be punished because of a supposed constitutional violation," such as a dismissal based on preindictment delay, are not acquittals. *Id.; see also id.* at 98 n. 11, 98 S.Ct. 2187 (stating that acquittals do not result from rulings "required by the Constitution or laws, but which are unrelated to factual guilt or innocence").

{13} As noted above, the Court in *Burks* dealt with a situation very different from those found in *Sanabria* and *Scott.* In *Burks,* notwithstanding his defense of insanity, the defendant was convicted in the trial court of bank robbery. 437 U.S. at 2–3, 98 S.Ct. 2141. On appeal, the Court of Appeals for the Sixth Circuit agreed with the defendant that there was insufficient evidence for his conviction. *Id.* at 3, 98 S.Ct. 2141. Nonetheless, the Sixth Circuit remanded the case to the district court for it to decide whether the defendant should stand a new trial. *Id.* at 4, 98 S.Ct. 2141. Thus, the issue in *Burks* was simply "whether a defendant may be tried a second time when a reviewing court has determined that in a prior trial the evidence was insufficient to sustain the verdict of the jury." *Id.* at 5, 98 S.Ct. 2141. In answering this question, the United States Supreme Court noted: "If the District Court had ... held [there was insufficient evidence] in the first instance, as the reviewing court said it should have done, a judgment of acquittal would have been entered and, of course, [the defendant] could not be retried for the same offense." *Id.* at 10–11, 98 S.Ct. 2141 (footnote omitted). Because of this, the Court held "that the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient." *Id.* at 18, 98 S.Ct. 2141.

██ {14} In *Burks,* the United States Supreme Court discussed the distinction between vacating a conviction on grounds of insufficiency of the evidence, and vacating a conviction on grounds of "trial error." *Id.* at 14–18, 98 S.Ct. 2141. Quoting *United States v. Tateo,* 377 U.S. 463, 465, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964), the Supreme Court stated that it "is a well-established part of ... constitutional jurisprudence" that the government is not precluded from "retrying a defendant whose conviction is set aside because of an error in the proceedings." *Id.* at 14, 84 S.Ct. 1587 (emphasis omitted). Thus, when a defendant's conviction is vacated on appeal because of "trial error," "*e.g.,* incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct," as opposed to insufficiency of the evidence, the defendant may be retried. *Id.* at 15, 84 S.Ct. 1587.

{15} After harmonizing *Sisson* and *Martin Linen Supply Co.*, along with *Sanabria, Scott*, and *Burks*—the three cases published on the same day—the United States Supreme Court has clearly established the following: (1) the State is barred from appealing when a defendant is acquitted by the trial court no matter how egregiously erroneous the trial court's ruling; (2) whether a defendant was acquitted does not depend on the trial court's characterization of its ruling; (3) an acquittal results when, after making an erroneous evidentiary ruling, the trial court concludes that the evidence is insufficient to proceed; (4) an acquittal does not result when, notwithstanding the defendant's possible culpability, the trial court determines the defendant's prosecution is constitutionally or statutorily prohibited; (5) a defendant may not be retried after the conviction is set aside because of insufficient evidence; (6) a defendant may be retried if the conviction was set aside because of trial error, including the situation when the trial court wrongly admitted incriminating evidence or wrongly excluded exculpatory evidence.

## B. *County of Los Alamos v. Tapia* Is Modified

{16} In *Tapia*, the defendant moved mid-trial to have all evidence resulting from his arrest "suppressed" on grounds that his arrest was illegal under New Mexico's Fresh Pursuit Act. The trial court granted the motion and dismissed the defendant's charges, stating: "[The charges] should be dismissed because the arrest of Defendant was illegal and all evidence in support thereof has been suppressed." 109 N.M. at 738, 790 P.2d 1017. The State appealed the ruling; the defendant argued double jeopardy barred the appeal. The Court of Appeals agreed with the defendant, holding that the trial court's ruling was an acquittal. *Id.*

{17} Relying on *Burks*, we reversed the Court of Appeals. After discussing that *Burks's* definition of "trial error" included erroneous evidentiary rulings, we stated:

> In the present case—the court of appeals' conclusions to the contrary notwithstanding—the trial court's ruling was not one based on evidentiary insufficiency but rather was based on the complete exclusion of all evidence offered by the prosecution because of an erroneous interpretation of the statute under which defendant was arrested. We believe that this is the kind of "trial error" for which the county can appeal and after which, if the appeal is successful, the defendant can be retried.

*Id.* at 740, 790 P.2d 1017. We admitted that this holding "might appear to represent a relaxation of the vigorous pronouncements in *Sanabria* that 'when a defendant has been acquitted at trial he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous.'" *Id.* at 741, 790 P.2d 1017 (quoting *Sanabria*, 437 U.S. at 64, 98 S.Ct. 2170). Nonetheless, we distinguished *Sanabria* by stating that in *Sanabria* "there was an actual *judgment of acquittal.*" *Id.*

{18} We acknowledged in *Tapia* that "according to the Supreme Court, the word 'acquittal' has no 'talismanic quality' for purposes of the Double Jeopardy Clause." *Id.* at 741 n. 10, 790 P.2d 1017 (citing *Serfass v. United States*, 420 U.S. 377, 392, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975)). Yet in distinguishing *Sanabria* on the grounds that the trial court in that case had actually entered a judgment of acquittal, we disregarded the long line of United States Supreme Court precedent clearly holding "that what constitutes an 'acquittal' is *not to be controlled by the form of the judge's action.*" *Martin Linen Supply Co.*, 430 U.S. at 571, 97 S.Ct. 1349 (emphasis added). Besides this, we inexplicably overlooked the fact that *Sanabria's* "vigorous pronouncement" that appeared to conflict with *Burks* was made on the exact same day that *Burks* was published. We doubt the United States Supreme Court intended to make a "vigorous pronouncement" in one case and, at the same time, "relax" that pronouncement in another case published the same day. *Sanabria* unmistakably held that the State *may not* appeal erroneous evidentiary rulings in favor of a defendant. *Sanabria*, 437 U.S. at 68–69, 98 S.Ct. 2170; *see also Webster v. Duckworth*, 767 F.2d 1206, 1214 (7th Cir.1985) ("*Sanabria* precludes carving an exception out of the *Burks* rule on the basis of an alleged 'trial error'

that results in insufficient prosecution evidence.").

{19} Notwithstanding our misunderstanding in *Tapia, Sanabria* and *Burks* are consistent with each other since the two cases dealt with entirely different situations. In fact, on the same day this apparent contradiction between *Sanabria* and *Burks* arose, the United States Supreme Court in *Scott* directly addressed and reconciled it:

> These, then, at least, are two venerable principles of double jeopardy jurisprudence. The successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, poses no bar to further prosecution on the same charge. A judgment of acquittal, whether based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict, may not be appealed and terminates the prosecution when a second trial would be necessitated by a reversal. What may seem superficially to be a disparity in the rules governing a defendant's liability to be tried again is explainable by reference to the underlying purposes of the Double Jeopardy Clause.... [T]he law attaches particular significance to an acquittal. To permit a second trial after an acquittal, however mistaken the acquittal may have been, would present an unacceptably high risk that the Government, with its vastly superior resources, might wear down the defendant so that even though innocent, he may be found guilty. On the other hand, to require a criminal defendant to stand trial again after he has successfully invoked a statutory right of appeal to upset his first conviction is not an act of governmental oppression of the sort against which the Double Jeopardy Clause was intended to protect.

*Scott,* 437 U.S. at 90–91, 98 S.Ct. 2187 (quoted authority, citations, and footnote omitted).

{20} Our error in *Tapia* was that we overlooked the fact that *Burks's* comments regarding "trial error" *only* pertain to those situations where the defendant is appealing a conviction. In other words, " '[t]rial error,' in the double jeopardy analysis, clearly means error that prejudices the defendant,

not the state." *Webster,* 767 F.2d at 1214. Because the defendant was not appealing a conviction in *Tapia, Burks* should not have been considered. Ultimately, by relying on *Burks,* we erroneously held that "trial error" occurred when the trial court in *Tapia* wrongly excluded prosecution evidence. *See Webster,* 767 F.2d at 1212 ("Clearly, [defendant] did not seek, nor could he have obtained, reversal of his conviction on the ground that the court excluded *prosecution* evidence.").

{21} Although our reasoning in *Tapia* was flawed, we have no doubt that the result of that case was correct. Thus, we modify *Tapia* without overruling it. The trial court in *Tapia* did not make an erroneous evidentiary ruling. Instead, as in *Scott,* the trial court made a legal judgment that, notwithstanding the possible culpability of the defendant, the defendant was *statutorily* precluded from being prosecuted under the Fresh Pursuit Act. That is, although the parties framed the issue as whether the trial court erred in excluding evidence, *see Tapia,* 109 N.M. at 737, 790 P.2d 1017, the real issue in *Tapia* was whether there was jurisdiction under the Fresh Pursuit Act to bring the defendant to trial in the first place. Thus, instead of relying on our mistaken interpretation of *Burks* to allow the State's appeal in *Tapia,* we should have relied on *Scott* to hold that the defendant was not acquitted in the trial court because the court's ruling was based on an interpretation of a statute and was unrelated to a factual finding of guilt or innocence. *See Scott,* 437 U.S. at 98 n. 11, 98 S.Ct. 2187.

{22} *State v. Melin,* 428 N.W.2d 227 (N.D. 1988), shows how we should have decided *Tapia.* In *Melin,* the defendants argued on First Amendment grounds that they could not be prosecuted for failing to send their child to a public school. *Id.* at 227–28. The trial court agreed. After issuing a memorandum opinion dismissing the complaint, "the court issued a 'judgment of not guilty,' " from which the State appealed. *Id.* at 228. The court in *Melin* began its analysis by stating:

> Although the trial court termed its action a "judgment of not guilty," the mere use of those words did not establish the action as

an acquittal.... Rather, one must look at the substance of the judge's ruling, whatever its label, and determine whether it actually represents a resolution of some or all of the factual elements of the offense charged.

*Id.* at 229 (quoted authority and emphasis omitted). The court in *Melin* recognized that the trial court dismissed "the complaint because it determined the statutory requirement that a teacher be certified unconstitutionally infringed on the [defendants'] First Amendment right to the free exercise of religion." *Id.* Critically, the trial court's determination on this point "was not a resolution of some or all of the factual elements of the offense charged." *Id.* at 230. Thus, after analogizing its case to *Scott,* the Supreme Court of North Dakota held that the Double Jeopardy Clause did not bar the State's appeal. *Id.* at 231.

{23} Although we accepted the parties' framing the issue in *Tapia* as that of whether the trial court erred in "suppressing" evidence, the trial court in that case did not make an evidentiary ruling. Instead, the trial court incorrectly interpreted a statute— the Fresh Pursuit Act—which precluded the State from trying the case. Similar to *Melin,* we should have relied on *Scott* instead of *Burks* to allow the State's appeal.

## C. Lizzol Was Acquitted and Double Jeopardy Bars the State's Appeal

■ {24} In the instant case, the situation is more akin to *Sanabria* than *Scott* and *Melin.* Here, the trial court made "an erroneous evidentiary ruling, which led to an acquittal for insufficient evidence." *Sanabria,* 437 U.S. at 68–69, 98 S.Ct. 2170. When the judge decided that the State lacked foundation to admit the BAT card into evidence, he exercised his discretion and made an evidentiary ruling. Absent the BAT card, the judge concluded that the State lacked evidence sufficient to convict Lizzol. Regardless of whether the evidentiary ruling was correct, the judge, based on that ruling, made a factual finding that the State could not prove its case. Even if the final written order can be construed as something other than a "judgment of acquittal," and notwithstanding the judge's clear indication that he wished the issue to be appealed, Lizzol was acquitted for purposes of double jeopardy. In other words, the trial court did not "terminate[ ] the proceedings ... on a basis not related to factual guilt or innocence." *Scott,* 437 U.S. at 92, 98 S.Ct. 2187. That is, the judge did not make a "legal judgment that [Lizzol], although criminally culpable, [could] not be punished because of a supposed [statutory or] constitutional violation." *Id.* at 98, 98 S.Ct. 2187. Even if the judge's evidentiary ruling was "egregiously erroneous," we are bound by the Double Jeopardy Clause to hold that Lizzol was acquitted and that the State is barred from appealing the trial court's ruling. *See Fong Foo,* 369 U.S. at 143, 82 S.Ct. 671.

{25} Our holding is consistent with similar cases in other jurisdictions. For instance, in *State v. Hulse,* 785 S.W.2d 373, 374 (Tenn. Crim.App.1989), the defendant was charged with a second DUI offense. After noticing that the certified copy of the defendant's first offense was not signed by the defendant, the trial court "dismissed" the indictment. *Id.* Concluding that "[t]he trial court [had] implicitly held ... the evidence [to be] insufficient to support enhancement based on the prior DUI offense," the court held that the State was barred from appealing the trial court's "dismissal." *Id.* at 376.

{26} Likewise, in *State v. Turley,* 128 Wis.2d 39, 381 N.W.2d 309, 310 (1986), three witnesses gave contradictory accounts of the defendant's actions. After the jury could not reach a verdict, the trial court dismissed the jury and declared a mistrial. *Id.* at 311. Subsequently, the court denied the defendant's motion for an acquittal, but granted his motion to dismiss the information with prejudice. *Id.* at 311–12. The court's reasoning was that "the testimony of the state's witnesses, although credible, is so inconsistent that the state would not be able to carry its burden of proof beyond a reasonable doubt at a subsequent trial." *Id.* at 312. The Supreme Court of Wisconsin held that the State's appeal was barred because "the trial court evaluated the evidence and determined that the evidence was legally insufficient to sustain a conviction." *Id.* at 314.

The appellate court came to this conclusion "[r]egardless [of] whether the [trial] court based [its] ruling on an erroneous standard of review or mislabeled the ruling." *Id.*

{27} Since the State is barred from appealing the evidentiary ruling in this case, we do not reach the State's argument that it made a sufficient foundational showing of the breathalyser's certification to have the BAT card admitted into evidence. Of course, had the judge admitted the evidence and had Lizzol been convicted, we could have decided the issue on Lizzol's appeal. If such were the situation, *Burks* discussion of "trial error" would be directly on point. We also note that even without the BAT card, the State was not wholly without evidence to proceed. The State could have pursued the DUI charge on an impaired to the slightest degree theory, *see* § 66–8–102(A), or the State could have brought forth additional evidence to lay the foundation regarding certification of the machine. Likewise, the State was not prohibited from pursuing the taillight violation.

{28} Finally, we note that some of the confusion around this topic may stem from the loose use of the word "suppression." In *Tapia*, the evidence was not "suppressed"; instead, the trial court simply ruled that the officer lacked jurisdiction under the Fresh Pursuit Act to make an arrest. Likewise, notwithstanding the judge's order that the BAT card was "suppressed," the evidence in this case was merely excluded for lack of foundation. "Suppression of evidence" is limited to the situation where otherwise admissible evidence is inadmissible because of the violation of a defendant's constitutional right: "[T]he phrases 'motion to suppress' or 'suppress evidence' have developed unique meanings in our criminal jurisprudence. Indeed, they are terms of art which contemplate more than the simple exclusion of evidence.... [A] motion to suppress presupposes that the evidence was *illegally obtained.*" *State v. Howard,* 908 S.W.2d 602, 604 (Tex.Ct.App.1995).

## III. CONCLUSION

{29} Lizzol was acquitted when the metropolitan court judge excluded the BAT card for lack of foundation and determined that there was insufficient evidence to proceed. Because the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution bars the State's appeal, we do not reach the issue of whether the judge's ruling was in error.

{30} **IT IS SO ORDERED.**

WE CONCUR: PAMELA B. MINZNER, PATRICIO M. SERNA, PETRA JIMENEZ MAES, and RICHARD C. BOSSON, Justices.