This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: October 31, 2024**

**No. S-1-SC-39893**

**STATE OF NEW MEXICO,**

Plaintiff-Petitioner,

v.

**JACKIE SANCHEZ,**

Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Douglas R. Driggers, District Judge**

Raúl Torrez, Attorney General
Teresa Ryan, Assistant Solicitor General
Santa Fe, NM

for Petitioner

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
Santa Fe, NM

for Respondent

### DECISION

**VARGAS, Justice.**

**{1}** This matter came before the Court on the State's petition for writ of certiorari filed pursuant to Rule 12-502 NMRA. The State requests that we reverse the Court of Appeals' order dismissing the State's appeal because the district court's directed verdict on the battery upon a peace officer charge amounted to an acquittal precluding appellate review. *See* Order Dismissing Appeal, *State v. Sanchez*, A-1-CA-40438 (N.M. Ct. App. Apr. 3, 2023). Because the district court directed a verdict based on insufficient

evidence, we hold that the Double Jeopardy Clause bars the State's appeal, notwithstanding that the district court's ruling was in error. We therefore affirm the order of the Court of Appeals.

## I.    BACKGROUND

**{2}**    Defendant Jackie Sanchez was charged with battery upon a peace officer, contrary to NMSA 1978, Section 30-22-24 (1971), among other charges.

**{3}**    The alleged officer-victim, sheriff's Sergeant Jorge Frias (Sgt. Frias), was not listed on the State's Final Witness List. On the morning of the trial, and outside the presence of the jury, the district court reviewed the State's Final Witness List and confirmed that Sgt. Frias was unavailable to testify and then asked the State whether it planned to "dismiss the count in which [Sgt. Frias] was the alleged victim," battery upon a peace officer. The State indicated that it did not plan to dismiss that count because three eyewitnesses were going to testify to prove the elements of that offense. In response, the district court warned, "Well, it puts you on notice that you are subject to directed verdict." Defense counsel then asked the judge to clarify whether he meant there may be a directed verdict "on one count or all counts," and the district court responded, "Only on the count that the court believes there is insufficient evidence for the matter to be presented to the jury."

**{4}**    During its pretrial review of the proposed jury instructions, the district court again expressed concern about the charge of battery upon a peace officer. Reviewing the "essential elements" of the charge, the district court read aloud the fourth element of the offense, "the defendant's conduct caused an actual threat to the safety of [Sgt. Frias] . . . *or* a meaningful challenge to the authority of [Sgt. Frias]," and then instructed the State, "You need to pick which theory you think is applied, understanding that the court is concerned about the viability of that charge altogether." *See* UJI 14-2211 NMRA (Battery upon a peace officer).

**{5}**    The State's first witness, sheriff's Sergeant Gabriel Sanchez (Sgt. Sanchez), testified that he observed Defendant kick Sgt. Frias while Defendant was detained in the jail's holding cell after his arrest in a road rage incident. Sgt. Sanchez testified that he watched another officer attempting to handcuff Defendant, who became combative and yelled a profanity at Sgt. Frias, who was standing in front of Defendant. Defendant then did "a Spartan kick from *300*[1]□just straight kicked [Sgt. Frias] in the chest," leaving a foot-shaped impression on Sgt. Frias's bulletproof vest. On cross-examination, defense counsel elicited testimony from Sgt. Sanchez that Sgt. Frias had been fired from the Sheriff's Office. Per defense counsel's request, Sgt. Sanchez also demonstrated the alleged "Spartan kick," after which defense counsel noted for the record that Sgt. Sanchez's demonstration of the kick only reached waist-level, not chest-level, like his testimony had reflected. Defense counsel ended its cross-examination of Sgt. Sanchez

---

[1]"*300*" is presumptively a reference to the 2006 movie by that name, featuring an ancient warrior battle.

by asking about the "thin blue line," and, specifically, whether "officers will sometimes support their brothers in blue," to which Sgt. Sanchez agreed.

{6}      After the court dismissed Sgt. Sanchez from the witness stand and the jury exited the courtroom for lunch, defense counsel raised an objection pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), alleging that the State had failed to disclose relevant information about Sgt. Frias's dismissal from the force. *See id.* at 154 (holding that nondisclosure of material evidence "is the responsibility of the prosecutor," regardless of "whether the nondisclosure was a result of negligence or design"). The district court responded that "*Giglio* is not an issue" because Sgt. Frias was unavailable to testify and continued, "I'm going to dismiss the case involving [Sgt.] Frias. I believe I made that clear in the pretrial conference. . . . If [Sgt. Frias] is not available to testify on the evidence in reference to that charge . . . then a directed verdict will issue. Period. . . . I'm not going to allow this charge to go forward. I haven't heard anything that would change my mind." When the State attempted to respond by stating that the elements of the crime do not require the victim's testimony, the district court interjected, "That would be true in every case where there was a witness that chose not to show up as an alleged victim. If you had somebody else observe something, then you could say, well we don't need the victim . . . ." After the State noted that it has obtained a conviction against a perpetrator of domestic violence when the victim was not present, the court responded, "Well, you can argue all you want. I've pretty well decided what I'm going to do. But you can continue to object and make a record if you like."

{7}      Once the trial resumed, two additional sheriff's officers, Detective Nathan Jimmerson and Carlos Enriquez, testified that they observed Defendant kick Sgt. Frias while Defendant was detained in the jail's holding cell.

{8}      At the close of the State's case, defense counsel moved for a directed verdict on the battery upon a peace officer charge. Defense counsel argued that the officer's testimony about the alleged kick was not believable, there was no documentation (such as medical testimony or photos) to corroborate the alleged kick, and the officers' testimony was not credible because it was "biased to protect their own." After hearing the State's response, the district court granted Defendant's motion for a directed verdict. The district court articulated its ruling as follows:

> I advised counsel at the pretrial conference and advised [the State] that the alleged victim, especially one that is battery on a peace officer, requires the testimony of that victim. You chose not to call that witness and failed to comply with the *Giglio* requirements regarding that officer's prior misconduct.[2] And that was a choice made by the State. As I stated earlier, if the court adopts your theory, that a law enforcement officer need not bother to show up and testify if he . . . has been battered, he has something else he wants to do, he just has a fellow officer who witnessed the alleged incident to come in, and then the defendant would be denied

---

2Although the district court mentions *Giglio*, 404 U.S. 150, in the explanation of its ruling here, earlier in the trial, the district court indicated that "*Giglio* is not an issue" because Sgt. Frias did not testify at trial.

his right to confront and cross examine . . . a critical witness, to wit the victim, or alleged victim of the crime.

So, for a number of standards and reasons, the court believes it is following the law and the absurd arguments to the contrary would upend justice. With your theory, the victim of any crime would not have to appear and testify if it were witnessed by someone other than the victim himself or herself, then that would be sufficient and the defendant would be denied the right to confront and cross examine the accuser who is obviously the alleged victim. The motion for directed verdict on [Count 1, battery upon a peace officer] is granted. There will be no amendments to the indictment. It is so ordered.

The State then asked if it could respond to "the Confrontation Clause issue," to which the district court responded, "You may not. The Court has heard enough. The court gave you specific opportunity to research and convince the court otherwise, . . . that opportunity is now closed."

**{9}** The Judgment and Sentence listed "Disposition: Directed Verdict" for the count of "Battery upon a Peace Officer." The State appealed that judgment.

**{10}** Before issuing its dismissal of the State's appeal, the Court of Appeals ordered supplemental briefing "instructing the State to address the issue of whether the State can appeal the directed verdict because it was unclear whether the district court ended the trial on a constitutional basis unrelated to factual guilt or innocence." Order Dismissing Appeal, *Sanchez*, A-1-CA-40438, ¶ 3 (internal quotation marks omitted). The Court of Appeals ultimately concluded that "the district court's decision was an evidentiary ruling where it determined that without the testimony of the victim officer, there was insufficient evidence to support the charge because Defendant could not confront his accuser." *Id.* ¶ 7. Thus, the Court of Appeals dismissed the State's appeal on the basis that it did not have jurisdiction to review the district court's decision that amounted to an acquittal. *Id.* ¶¶ 7-9. This appeal followed.

## II.    DISCUSSION

**{11}** The standard of review for the question of law in this case—whether double jeopardy principles bar appellate review of the district court's dismissal of the battery upon a peace officer charge—is de novo. *State v. Baca*, 2015-NMSC-021, ¶ 25, 352 P.3d 1151.

**{12}** The single issue in this case is whether the district court's dismissal of the battery upon a peace officer charge amounted to an acquittal. A verdict of acquittal "cannot be reviewed, on error or otherwise, without putting a defendant twice in jeopardy, and thereby violating the Constitution." *State v. Lizzol*, 2007-NMSC-024, ¶ 7, 141 N.M. 705, 160 P.3d 886 (brackets, internal quotation marks, and citation omitted); *see also* U.S. Const. amend. V ("No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb."); N.M. Const. art. II, § 15 ("[N]or shall any person be twice put

in jeopardy for the same offense."). "[T]here is no exception permitting retrial once the defendant has been acquitted, no matter how egregiously erroneous the legal rulings leading to that judgment might be." *Sanabria v. United States*, 437 U.S. 54, 75 (1978) (internal quotation marks and citation omitted).

**{13}** To determine whether a dismissal amounts to an acquittal, "what matters is not the words of the trial court—either written or oral[.] . . . Instead, whether a defendant was acquitted depends on whether the trial court's ruling, however labeled, correctly or incorrectly resolved some or all of the factual elements of the crime." *Lizzol*, 2007-NMSC-024, ¶ 7. This Court has enumerated the following parameters to determine whether double jeopardy bars retrial after a dismissal:

> (1) the [s]tate is barred from appealing when a defendant is acquitted by the trial court no matter how egregiously erroneous the trial court's ruling; (2) whether a defendant was acquitted does not depend on the trial court's characterization of its ruling; (3) an acquittal results when, after making an erroneous evidentiary ruling, the trial court concludes that the evidence is insufficient to proceed; (4) an acquittal does not result when, notwithstanding the defendant's possible culpability, the trial court determines the defendant's prosecution is constitutionally or statutorily prohibited; (5) a defendant may not be retried after the conviction is set aside because of insufficient evidence; (6) a defendant may be retried if the conviction was set aside because of trial error, including the situation when the trial court wrongly admitted incriminating evidence or wrongly excluded exculpatory evidence.

*Id.* ¶ 15.

**{14}** The district court in this case granted Defendant's motion for directed verdict on the battery upon a peace officer charge after the State rested its case. A directed verdict "requires a court to decide at the conclusion of the state's case whether the direct or circumstantial evidence admitted at trial, together with all reasonable inferences to be drawn therefrom, will sustain a finding of guilt beyond a reasonable doubt." *Baca*, 2015-NMSC-021, ¶ 31. And if the district court dismisses a case on the basis that the state presented insufficient evidence to support a conviction, the district court's order, "however characterized, ha[s] the legal effect of an acquittal." *Id.* ¶ 32 (internal quotation marks and citation omitted); *see also* Wayne R. LaFave et al., 6 Crim. Proc. § 25.3(c) (4th ed. 2015) ("If the judge determines at the end of the government's case that the evidence on one count is insufficient to sustain a conviction, the Constitution bars reconsideration of that acquittal by the judge once the trial proceeds to the defendant's introduction of evidence on the remaining counts.").

**{15}** But here, the State argues that "the ruling was a directed verdict in name only." Instead, according to the State, it was a "procedural dismissal" that did not implicate double jeopardy because it was 'unrelated to factual guilt or innocence.'" The State notes that the district court did not comment on the sufficiency of the evidence in its ruling, nor did it comment on the "merits of Defendant's culpability." Also, the district

court did not explicitly verbalize that it was in agreement with Defendant's argument in its motion for directed verdict—that there was insufficient evidence for the charge because the officers were biased and their testimony about the alleged kick was implausible. Instead, the State argues that the district court's remarks showed that the ruling was based solely on the legal conclusion that the "State's failure to call the victim as a witness was an infringement on Defendant's confrontation rights," and therefore the ruling was not "a true directed verdict of acquittal" because it did not contemplate Defendant's possible culpability.

**{16}** We disagree with the State's position that the district court's ruling did not amount to an acquittal. The record does not support the State's contention that the district court's ruling was a "Confrontation Clause-based procedural dismissal" because, as Defendant explains, the district court did not make a confrontation ruling. For the district court to have made a confrontation-based ruling, it would have had to exclude or otherwise limit testimonial hearsay of Sgt. Frias—but the State never introduced any statement or testimony of Sgt. Frias. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004) (holding that the Sixth Amendment of the Constitution grants a defendant the right to confront an out-of-court declarant's statements against him). Even though the district court mentioned Defendant's confrontation rights in the explanation of its ruling, those comments alone did not convert the district court's directed verdict into a constitution-based ruling unrelated to factual guilt or innocence. Instead, the district court concluded that the evidence presented was insufficient because Sgt. Frias did not testify, a ruling that does not implicate the Confrontation Clause.

**{17}** The record supports a conclusion that the district court's ruling was a true directed verdict of acquittal. Before trial, the district court warned the State that the battery upon a peace officer charge "was subject to directed verdict" and elaborated that only the count for which there was "insufficient evidence for the matter to be presented to the jury" would be subject to directed verdict. The district court later expressed concern about which of the alternative theories was the State's theory for one of the essential elements of the charge—whether Defendant's conduct caused an actual threat to the safety of Sgt. Frias or a meaningful challenge to the authority of Sgt. Frias—during its pretrial review of the proposed jury instructions. *See* UJI 14-2211.5.

**{18}** The timing of the ruling itself also supports a conclusion that the district court granted a directed verdict on the battery upon a peace officer charge—the district court granted Defendant's motion only after the prosecution had rested, and immediately before ruling on Defendant's remaining directed verdict motions on other counts. *See Baca*, 2015-NMSC-021, ¶ 31 (explaining that the district court decides a motion for directed verdict "at the conclusion of the state's case"). But the State argues that the timing of the district court's remarks before the prosecution concluded its case dictates otherwise; after the first State's witness testified, the district court remarked that he was "'pretty well decided'" that he would not allow the charge to go forward because Sgt. Frias was not present to testify. According to the State, these remarks show that the district court did not weigh the State's evidence of the crime because it had made up its mind before the remaining State's witnesses testified. The State likens this case to *Baca*, where the magistrate court "dismiss[ed] the case with prejudice" during the trial,

before the prosecution had presented all its evidence, and after the court suppressed the testimony of a key state's witness as a sanction for a procedural-rule violation—that the state's refiled complaint did not comply with the requirements of the governing rule. *See id.* ¶¶ 7, 12. In *Baca*, this Court concluded that the dismissal did not "trigger an acquittal because it was unrelated to the sufficiency of the [s]tate's evidence." *Id.* ¶ 38.

**{19}** We agree with Defendant's position that *Baca* is inapposite. In *Baca*, the magistrate court dismissed the case on a purely procedural basis—as a sanction for the state's noncompliant pleading—which did not require the court "to evaluate the sufficiency of the evidence," and the court did so before hearing the remaining prosecution witnesses' testimony on the merits of the charge in question. *Id.* ¶¶ 36, 38. But here, on the other hand, the district court made its ruling only after hearing all testimony about the alleged battery upon Sgt. Frias. And even though (as the State notes) the district court did not comment specifically on the sufficiency of the evidence in its ruling, its order was in direct response to Defendant's motion for directed verdict, which was made on the basis that the State had not presented sufficient evidence of that charge because the witness-officers were biased and their account of the kick was not plausible. Even though the district court's label of its ruling as a directed verdict is not determinative, the district court here "resolved some or all of the factual elements of the crime" in response to Defendant's motion, constituting an acquittal. *See Lizzol*, 2007-NMSC-024, ¶ 7.

**{20}** The district court's remark that it was "pretty well decided" on the issue before the close of the prosecution's case does not definitively show that the district court did not consider the sufficiency of the remaining evidence before making its decision. The district court was free to change its mind before making its ruling and it could have done so after hearing the remainder of the State's case. *Cf. State ex rel. Regents of N.M. State Univ. v. Siplast, Inc.*, 1994-NMSC-065, ¶ 5, 117 N.M. 738, 877 P.2d 38 (holding that a district court has the inherent authority to reconsider an interlocutory order). The district court's remarks more accurately reflect its skepticism regarding the sufficiency of the State's evidence for the battery upon a peace officer charge—skepticism that was likely grounded in unreviewable legal error.

**{21}** We therefore agree with the State that the district court likely erred in its application of the directed verdict standard. "A directed verdict is not proper where there is substantial evidence to support the conviction. Substantial evidence is defined as that evidence which is acceptable to a reasonable mind as adequate support for a conclusion." *State v. Robinson*, 1980-NMSC-049, ¶ 11, 94 N.M. 693, 616 P.2d 406. Viewed in the light most favorable to the State, the testimony of the three eyewitness-officers was likely acceptable to a reasonable mind as adequate support for the conclusion that Defendant battered Sgt. Frias. *See State v. Gilbert*, 1982-NMSC-137, ¶ 5, 99 N.M. 316, 657 P.2d 1165 ("It is well established in New Mexico that upon motion for a directed verdict of acquittal, the trial court must review the evidence in the light most favorable to the State to determine if that evidence will support a conviction on the crime charged."). But, even if the district court egregiously erred in its application of the directed verdict standard, this Court cannot review the district court's directed verdict of acquittal without violating Defendant's double jeopardy protections. *See Lizzol*, 2007-

NMSC-024, ¶ 15 ("[T]he [s]tate is barred from appealing when a defendant is acquitted by the trial court no matter how egregiously erroneous the trial court's ruling." (second alteration in original)); *Evans v. Michigan*, 568 U.S. 313, 320 (2013) ("[A]n acquittal due to insufficient evidence precludes retrial, whether the court's evaluation of the evidence was 'correct or not,' and regardless of whether the court's decision flowed from an incorrect antecedent ruling of law." (citation omitted)).

{22}     We also agree with the State that the district court erred to the extent that it required the testimony of Sgt. Frias as a matter of law. But, as Defendant notes, even if the district court "incorrectly applied such a bright-line rule," it still concluded that without Sgt. Frias's testimony, there was insufficient evidence to support a conviction for battery upon a peace officer. The district court's ruling here is akin to the district court's ruling in *Lizzol.* In that case, the district court erroneously suppressed the defendant's blood-alcohol test for lack of foundation and, because of its suppression ruling, it "concluded that the [s]tate lacked evidence sufficient to convict" the defendant of DWI. *Lizzol*, 2007-NMSC-024, ¶¶ 2, 24.

{23}     Here, like in *Lizzol*, the district court made an erroneous evidentiary ruling when it concluded that Sgt. Frias's testimony was required for the battery upon a peace officer charge as a matter of law, "which led to an acquittal for insufficient evidence." *Id*. ¶ 24 (internal quotation marks and citation omitted). Thus, applying *Lizzol* to the facts here, the Double Jeopardy Clause bars the State's appeal.

## III.     CONCLUSION

{24}     We affirm the order of the Court of Appeals.

{25}     **IT IS SO ORDERED.**

**JULIE J. VARGAS, Justice**

**WE CONCUR:**

**DAVID K. THOMSON, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**BRIANA H. ZAMORA, Justice**