873 P.2d 254

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Jack M. CLIFFORD, Defendant–
Appellant.**

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Jack J. CLIFFORD, Defendant–Appellant.**

No. 21142.

Supreme Court of New Mexico.

April 18, 1994.

Tom Udall, Atty. Gen., Jerome Marshak, Richard Klein, Asst Attys. Gen., Santa Fe, for appellee.

James L. Brandenburg, Albuquerque, for appellant Jack M. Clifford.

Paul J. Kennedy, Albuquerque, for appellant Jack J. Clifford.

*OPINION*

BACA, Justice.

Defendants' motions for rehearing to consider whether Defendants' racketeering convictions should be reversed was considered but not granted. We withdraw our opinion filed March 8, 1994 and substitute the following after reviewing Defendants' motions for rehearing and the State's reply.

Defendants Jack M. Clifford and Jack J. Clifford appeal their convictions on twelve counts of embezzlement, one count of fraud, and one count of racketeering. Pursuant to NMSA 1978, Section 34-5-14(C) (Repl. Pamp.1990), we accepted certification from the Court of Appeals to address one issue: Whether the trial court erred in instructing the jury on the elements of embezzlement. Because our jurisdiction under Section 34-5-14(C) extends to the entire case, *State v. Orosco*, 113 N.M. 780, 781, 781 n. 2, 833 P.2d 1146, 1147, 1147 n. 2 (1992), we address the following additional issues: (1) Whether the trial court erred when it allowed the testimony of two attorney witnesses and (2) whether substantial evidence supports the fraud conviction.[1] After considering Defendants' motions for rehearing, we also address whether Defendants' racketeering convictions should be reversed. We affirm in part, reverse in part, and remand for a new trial on the embezzlement and racketeering charges.

**I**

The following facts viewed in the light most favorable to sustaining the verdict, *see State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988), were adduced at Defendants' trial. Defendants Jack J. and Jack M. Clifford were involved in countless limited partnerships for the development of real estate. Defendants' land development business consisted of obtaining investors who would advance money to acquire and develop real estate. The property would be improved, refinanced and sold at a profit with the proceeds being distributed to the investors and the Cliffords. At the center of activity was the Clifford Partnership. This partnership consisted of Defendants and acted as a clearinghouse for most of the Cliffords' other entities.

This case centers around a particular limited partnership project known as Clifford Plaza II (CPII). In order to promote CPII, Defendants informed investors that excess funds from the project were to roll into an investment known as Clifford Plaza III (CPIII). This was to be an office building adjacent to and similar to CPII.

During the latter part of 1986 and early 1987, fourteen limited partners invested a total of $1,016,000 in CPII. However, the funds being channeled into CPII were transferred into the Clifford Partnership. In fact, on twelve occasions between November 24, 1986 and May 6, 1988, the Cliffords signed checks which transferred a total of $1,049,000 from CPII to the Clifford Partnership. The Cliffords spent the transferred money on the ordinary operating expenses of the Clifford Partnership, in which none of the CPII limited partners had any interest. In 1988, the limited partners became suspicious when no financial statement for 1987 was released and the Cliffords would not explain why no statement would be released. The investors hired an attorney, Paul Fish, to investigate the Cliffords' records. Once Fish discovered the transfer of over $1 million from CPII to Clifford Partnership, the Cliffords attempted to "cover their tracks" by assigning to CPII limited partnership interests in entities that owned an interest in land known as the Schwartzman property. At the time of the assignment, however, the mortgage underlying the Schwartzman property was about to be in default and the Cliffords lacked the resources to make the mortgage payments. Consequently, the property was repossessed by the mortgagee leaving CPII with nothing.

The transfers of money from CPII to the Clifford Partnership form the basis of the State's embezzlement case and each transfer was charged as a separate count of embezzlement.

The State's fraud charges revolve around the last limited partner into CPII, an entity

1. Defendants also asserted that the record lacked substantial evidence to support their convictions on embezzlement. Our resolution of the issue certified obviates the need to address that issue.

managed by Gary Swearingen and Valerie Ricks, a father and daughter partnership. Swearingen and Ricks invested $461,500 in CPII, made in two installments. They paid $255,000 on March 27, 1987 and $206,500 on May 5, 1987. By the time of the first installment, the Cliffords had transferred over a half-million dollars from CPII. Before investing in CPII, Swearingen and Ricks were told by the Cliffords that CPII funds would be used to develop CPIII. They were not told that CPII money had been taken and spent by the Cliffords for their own enterprises, and while current CPII financial information was available, the Swearingens were sent the outdated and misleading 1986 financial statements. In fact, the same day Swearingen and Ricks paid $255,000 to CPII, the entire sum was transferred to the Clifford Partnership. All but $500 of the next installment of $206,500 was also diverted by the Cliffords, once again on the very day the funds arrived. Defendants were subsequently charged with and convicted of embezzlement in excess of $20,000 and $2,500, fraud in excess of $20,000, and racketeering. Defendants appealed their convictions to the Court of Appeals which certified the fraudulent intent jury instruction issue to this Court.

## II

The first issue that we address is whether the trial court erred when it instructed the jury regarding the embezzlement charges. Both Defendants claim that the trial court erred in instructing the jury because the jury instructions as given omitted an essential element of embezzlement: fraudulent intent. They both contend that this deficiency in instructing the jury mandates reversal of their convictions for embezzlement. We agree.

In *State v. Green*, 116 N.M. 273, 861 P.2d 954 (1993), we considered the propriety of the uniform jury instruction for embezzlement, SCRA 1986, 14–1641. In *Green*, the trial court's embezzlement instruction tracked the language of the uniform jury instruction. We held that the instruction failed to include fraudulent intent, an essential element required for a conviction under our embezzlement statute, Section 30–16–8

(Repl.Pamp.1984). *Green*, 116 N.M. at 277, 861 P.2d at 958. While the defendant in *Green* neither objected to the instructions as given nor tendered a correct instruction, we reversed his conviction for embezzlement because the trial court failed to instruct the jury on all elements essential for a conviction. *Id.* at 279, 861 P.2d at 960.

In the case at bar, the trial court gave a series of instructions regarding the numerous charges of embezzlement against Defendants. These instructions followed the language of SCRA 14–1641 and were identical in form to the embezzlement instruction given in *Green*. The trial court also charged the jury with a general intent instruction, which is patterned after SCRA 14–141. As in *Green*, the instructions as given did not instruct the jury that it needed to find that the defendants acted with fraudulent intent to convict them of the embezzlement charges. Moreover, the general intent instruction as given does not correct the error propagated by the failure to instruct on fraudulent intent. *See State v. Bunce*, 116 N.M. 284, 288–89, 861 P.2d 965, 969–70 (1993). We reiterate our holding in *Bunce* that the failure to include an essential element in the elements instruction can never be corrected by including the concept elsewhere in the instructions. *See id.*

While Defendants in the instant case couch their arguments in terms of a constitutional violation, we prefer to decide this issue under the doctrine enunciated in *State v. Osborne*, 111 N.M. 654, 808 P.2d 624 (1991). In that case, the trial court failed to instruct the jury on all essential elements of the crime. We based our reversal on two separate grounds: First, that SCRA 1986, 5–608(A), requires that the jury be instructed on all elements essential for conviction; and second, that a conviction based on a jury instruction that omitted an essential element under the facts of the case amounted to fundamental error. *Osborne*, 111 N.M. at 661–63, 808 P.2d at 631–33.

In this case, we need not resort to an application of the doctrine of fundamental error because Defendants, unlike the defendant in *Green*, offered an instruction on fraudulent intent. We hold that under the

facts here, failure to instruct the jury on an essential element of embezzlement—fraudulent intent—is reversible error under Rule 5–608(A). *See Green,* 116 N.M. at 277, 861 P.2d at 958. Accordingly, we reverse Defendants' embezzlement convictions and remand for a new trial on those counts.

### III

We next address whether substantial evidence supports the fraud convictions. Defendants contend that there was insufficient evidence to support a verdict of guilty beyond a reasonable doubt that they misrepresented facts and intended to deceive or cheat Gary Swearingen and Valerie Ricks. This is an essential element of fraud and the jury was so instructed in Jury Instruction Number 16.

Our review consists of determining "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *Sutphin,* 107 N.M. at 131, 753 P.2d at 1319. "Substantial evidence is that evidence which is acceptable to a reasonable mind as adequate support for a conclusion." *State v. Isiah,* 109 N.M. 21, 30, 781 P.2d 293, 302 (1989). We view the evidence in the light most favorable to supporting the verdict and resolve all conflicts and indulge all permissible inferences in favor of upholding the verdict. *Sutphin,* 107 N.M. at 131, 753 P.2d at 1319. We review all of the evidence presented in the case, *State v. Aranda,* 94 N.M. 784, 786, 617 P.2d 173, 175 (Ct.App.1980), and neither reweigh the evidence nor substitute our judgment for that of the jury, *Sutphin,* 107 N.M. at 131, 753 P.2d at 1319.

In light of the above standard of review, Defendants' contentions of insufficient evidence to support guilty verdicts of fraud must fail. "Fraud consists of the intentional misappropriation or taking of anything of value which belongs to another by means of fraudulent conduct, practices or representations." NMSA 1978, § 30–16–6 (Repl. Pamp.1984). There was sufficient evidence presented at trial of all of the above elements

so that the jury could have reasonably inferred that Defendants intentionally misappropriated funds invested by Swearingen and Ricks and that they received those funds due to misrepresentations made to Ricks. First, Defendants led Swearingen and Ricks, along with the other limited partners to believe that all funds generated from CPII would be used to develop CPIII and not to maintain the Defendants' own partnerships. Evidence was presented that neither Defendant revealed to Swearingen nor Ricks that funds would be taken from CPII for use in the Clifford Partnership. Moreover, Defendants' offering circular stated that the general partners were accountable to the partnership as fiduciaries and Defendants' own expert testified that this duty required them to use the CPII assets only for the benefit of CPII and CPIII. Evidence was presented, however, showing that the funds invested by Swearingen and Ricks in CPII were immediately diverted from the partnership and expended to meet the obligations of Defendants' other enterprises. The jury could have reasonably found that the Defendants intentionally misappropriated the funds invested by Swearingen and Ricks by fraudulently representing what would be done with those funds.

Defendants raise several arguments. First, Defendants suggest that no fraud occurred because Swearingen and Ricks did not suffer a financial loss. This argument is without merit because a criminal conviction for fraud does not require that the victim suffer a pecuniary loss. *See State v. McCall,* 101 N.M. 32, 32–33, 677 P.2d 1068, 1068–69 (1984).

Defendants also contend that their representation that CPII excess funds would be invested for the benefit of the partnership and its partners was not deceptive because such an investment was made by acquiring interests in the Schwartzman property. However, Defendants immediately used the transferred excess funds, including the money invested by Swearingen and Ricks, for their own purposes. Furthermore, interests in the partnerships' owning interests in the Schwartzman property were not transferred to CPII until almost two years later, at which time Defendants' entities were unable to

make the mortgage payments due on the property. Whether Defendants actually invested the funds was a matter for the jury to decide, *see State v. Schifani*, 92 N.M. 127, 130, 584 P.2d 174, 177 (Ct.App.), *cert. denied*, 92 N.M. 180, 585 P.2d 324 (1978), and sufficient evidence was presented to support a jury finding that Defendants did not invest the funds for the benefit of the partnership.

■ Finally, Jack J. Clifford argues that there was no evidence that the investors would not have invested in CPII had they been made aware of the transfer of excess funds to Clifford Partnership. We agree with the Court of Appeals that Ricks's testimony provided the necessary evidence. She testified that she would have "questioned why the transfers were made and what the money was doing there." Ricks also stated that she would not have invested $206,500 on May 5 if she had known that Defendants intended to transfer the money to Clifford Partnership. In sum, the jury could have reasonably found from the evidence that Swearingen and Ricks would not have invested in CPII if they had known that the excess funds had been spent for Defendants' own purposes rather than invested.

### IV

■ We next address whether Defendants' racketeering convictions should be reversed. Defendants were convicted for racketeering under NMSA 1978, Section 30–42–4(A) (Repl.Pamp.1989). Because we are reversing Defendants' embezzlement convictions, Defendants' racketeering convictions must also be reversed. To be convicted under Section 30–42–4(A), Defendants must have committed at least two punishable offenses that constitute racketeering. *See* § 30–42–3(D). Without the embezzlement convictions, only one predicate offense, fraud, remains. We reverse the racketeering convictions because the law requires us to do so. We do not, however, do so in response to Defendants' arguments on rehearing that the racketeering conviction was properly challenged on appeal. The only mention that the racketeering conviction could not stand, which we could find, was contained in the conclusory sentence of Defendant Jack J.

Clifford's brief in chief and Defendant Jack M. Clifford's brief in chief. We remind counsel that we are not required to do their research, *Lee v. Lee (In re Adoption of Doe)*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984), and that this Court will not review issues raised in appellate briefs that are unsupported by cited authority. *State v. Isiah*, 109 N.M. 21, 25, 781 P.2d 293, 297 (1989). When a criminal conviction is being challenged, counsel should properly present this court with the issues, arguments, and proper authority. Mere reference in a conclusory statement will not suffice and is in violation of our rules of appellate procedure. *See* SCRA 1986, 12–213 (Repl.Pamp.1992).

### V

■ Finally, having held that Defendants' convictions for embezzlement should be reversed, we need not address whether the district court erred by permitting two attorneys, John Salazar and Paul Fish, to render their opinions regarding the authority of Defendants to act as they did under the provisions of the limited partnership agreement and related documents. Their testimony related solely to the embezzlement convictions and not the fraud convictions that we affirm. On remand, however, suffice it to say that opinion testimony that seeks to state a legal conclusion is inadmissible. *See First Nat'l Bank in Albuquerque v. Sanchez*, 112 N.M. 317, 324, 815 P.2d 613, 620 (1991) (the trial court has "the exclusive province and responsibility" of telling the jury whether conduct is or is not "legal"); *Beal v. Southern Union Gas Co.*, 66 N.M. 424, 436–37, 349 P.2d 337, 346 (1960) (neither expert nor non-expert witnesses are permitted to give opinions on questions of law).

On appeal, we affirm Defendants' fraud conviction. We reverse the embezzlement and racketeering convictions and remand for a new trial on those charges.

**IT IS SO ORDERED.**

RANSOM and FRANCHINI, JJ., concur.