Certiorari Denied, February 25, 2019, No. S-1-SC-37421

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2019-NMCA-013

Filing Date: November 13, 2018

Docket No. A-1-CA-34839

STATE OF NEW MEXICO,

 Plaintiff-Appellee,

v.

ANGELA CATT,

 Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY
Mark T. Sánchez, District Judge

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Law Offices of Jennifer J. Wernersbach, PC
Jennifer J. Wernersbach
Albuquerque, NM

for Appellant

## OPINION

**ATTREP, Judge.**

**{1}** Defendant Angela Catt was convicted by a jury of racketeering, conspiracy to commit racketeering, and conspiracy to commit drug trafficking. Defendant moved the

district court to set aside the racketeering convictions[1] and enter judgments of acquittal on the grounds that the jury had failed to find she committed the requisite two predicate acts and that there was instructional error. Defendant additionally argued that retrial would violate her right to be free from double jeopardy on the ground that sufficient predicate acts were lacking. The district court vacated Defendant's racketeering convictions but permitted retrial. Defendant now appeals this order. We hold that instructional error warranted vacating Defendant's racketeering convictions. Because the State may rely on conspiracy to commit drug trafficking as a predicate offense, however, sufficient predicates exist to permit retrial of the racketeering charges. Defendant additionally appeals her conviction for conspiracy to commit drug trafficking on sufficiency grounds. We hold that substantial evidence supported this conviction. We therefore affirm.

**BACKGROUND**

**{2}**    Defendant was alleged to be associated with a methamphetamine trafficking organization known as "the AZ Boys." She was charged by indictment with three counts of methamphetamine trafficking occurring on March 18, 2012, April 8, 2012, and May 1, 2012; three counts of conspiracy to traffic methamphetamine related to the same dates; and one count each of racketeering and conspiracy to commit racketeering. After a four-day trial, a jury convicted Defendant of racketeering (Count 1), conspiracy to commit racketeering (Count 2), and conspiracy to traffic methamphetamine on April 8, 2012 (Count 8). The jury acquitted Defendant of the trafficking and conspiracy to traffic counts pertaining to the date of March 18, 2012 (Counts 5 and 6), as well as the trafficking count pertaining to the date of April 8, 2012 (Count 7). The jury deadlocked on the trafficking and conspiracy to traffic counts related to the alleged conduct of May 1, 2012 (Counts 3 and 4). The district court declared a mistrial as to those counts and permitted retrial. Defendant does not appeal this decision.

**{3}**    Shortly after trial, Defendant moved the district court to set aside her racketeering convictions, and to enter judgments of "not guilty" or dismiss the racketeering counts with prejudice. Defendant argued that the failure of the jury to convict her of two trafficking counts demonstrated that insufficient evidence existed to convict her of racketeering and conspiracy to racketeer. Therefore, Defendant asserted, a retrial of those counts would violate her right not to be tried twice for the same conduct. At the hearing on Defendant's motion, Defendant additionally argued that the jury instruction defining "racketeering" was incorrect because it included all of the possible predicate offenses but failed to provide the elements of those crimes. The State agreed that the jury instructions for the racketeering counts were incorrect. Ultimately, the State did not oppose vacatur of the racketeering convictions but argued that retrial, not acquittal or dismissal, was the

---

[1] For ease of reference, the Court refers to racketeering and conspiracy to commit racketeering collectively as "the racketeering convictions," "the racketeering charges," or "the racketeering counts" when no distinction is necessary.

appropriate remedy. Both Defendant and the State maintained that the convictions for the racketeering charges and acquittals for the trafficking charges were inconsistent.

{4}     The district court vacated the racketeering convictions but ordered a retrial. Although the exact basis for the district court's decision is not clear, the court noted the inconsistencies in the verdicts, that the motion was uncontested in terms of vacating the racketeering convictions, and that the State agreed that there was instructional error. The district court additionally entered a judgment and sentence on Defendant's conviction for conspiracy to commit trafficking methamphetamine on April 8, 2012 (Count 8), sentencing Defendant to a four-year term of incarceration. Defendant appeals the district court's denial of her request for judgments of acquittal or dismissal of the racketeering charges and appeals her conviction for conspiracy to commit drug trafficking for sufficiency of the evidence. Additional facts are discussed as needed in our analysis. Table 1 summarizes the present posture of the charges.

| Table 1 | | | |
|---|---|---|---|
| Count | Charge | Verdict | District Court's Order |
| 1 | Racketeering | Guilty | Vacated / retrial ordered |
| 2 | Conspiracy to commit racketeering | Guilty | Vacated / retrial ordered |
| 3 | Trafficking methamphetamine on May 1, 2012 | Deadlocked | Retrial ordered |
| 4 | Conspiracy to commit trafficking methamphetamine on May 1, 2012 | Deadlocked | Retrial ordered |
| 5 | Trafficking methamphetamine on March 18, 2012 | Not Guilty | Judgment of acquittal entered |
| 6 | Conspiracy to commit trafficking methamphetamine on March 18, 2012 | Not Guilty | Judgment of acquittal entered |
| 7 | Trafficking methamphetamine on April 8, 2012 | Not Guilty | Judgment of acquittal entered |
| 8 | Conspiracy to commit trafficking methamphetamine on April 8, 2012 | Guilty | Judgment and sentence entered |

## THE RACKETEERING CONVICTIONS

{5}     We first address whether this Court has jurisdiction to review the denial of Defendant's motion for acquittal or dismissal in the absence of a final order. Concluding

we do, we then lay out general principles of double jeopardy and racketeering. We next hold that the district court correctly determined that both racketeering convictions should be set aside for instructional error. The issue then is whether Defendant can, consistent with her right to be free from double jeopardy, be subject to retrial on these charges. We hold that she can. Finally, although the parties request us to opine about the scope of retrial, we decline to do so.

## I. The Court Has Jurisdiction to Review the District Court's Order Denying Defendant's Motion for Acquittal or Dismissal

**{6}** The State argues that Defendant's appeal should be summarily dismissed "for want of a final order" or, if the appeal is construed as an interlocutory appeal, because it is untimely. The district court's order, however, implicates Defendant's constitutional right to avoid double jeopardy—indeed, Defendant's "right not to be subjected to a second trial for the same offense could not be remedied once the second trial has taken place." *State v. Apodaca*, 1997-NMCA-051, ¶ 16, 123 N.M. 372, 940 P.2d 478. This Court, therefore, has jurisdiction to immediately review the district court's denial of Defendant's motion for acquittal or dismissal of the racketeering charges. *See id.* ¶¶ 15-17 (holding that "a defendant has a constitutional right to appeal from an order denying a motion to dismiss a charge on the ground that trial of the charge would subject the defendant to double jeopardy" and that this Court has jurisdiction to hear such an appeal); *see also State v. McClaugherty*, 2007-NMCA-041, ¶ 27, 141 N.M. 468, 157 P.3d 33 ("The denial of the motion [to bar reprosecution] below is all that is required by *Apodaca* to confer jurisdiction on this Court to hear an immediate direct appeal.").

## II. Double Jeopardy

**{7}** The Constitutions of the United States and New Mexico guarantee that no person shall be "twice put in jeopardy" for the same offense.[2] U.S. Const. amend. V; N.M. Const. art. II, § 15. "The Double Jeopardy Clause operates to protect an individual from repeated attempts by the state, 'with all its resources and power,' to secure a conviction, with the consequent anxiety, embarrassment, and undue expense to a defendant that results from retrial." *Ben*, 2015-NMCA-118, ¶ 7 (quoting *Cty. of Los Alamos v. Tapia*, 1990-NMSC-038, ¶ 16, 109 N.M. 736, 790 P.2d 1017). "In common parlance, the state, upon failing to convict a defendant after a full and fair opportunity to do so is barred from a second bite of the apple." *Id.* (internal quotation marks and citation omitted). Retrial is not barred, however, when a conviction has been set aside for reasons other than insufficiency of the evidence. *State v. Lizzol*, 2007-NMSC-024, ¶ 14, 141 N.M. 705, 160 P.3d 886 (holding that "when a defendant's conviction is vacated on appeal because of trial error, e.g., . . . incorrect instructions, . . . as opposed to insufficiency of the evidence, the defendant may be retried" (internal quotation marks

---

[2] Neither party argues that there is any difference in the application of the state and federal constitutional provisions to this case. We, therefore, do not distinguish between them in our analysis. *See State v. Ben*, 2015-NMCA-118, ¶ 7, 362 P.3d 180.

and citation omitted)). We "review[] claims involving alleged violations of a defendant's right to be free from double jeopardy de novo." *State v. Loza*, 2018-NMSC-034, ¶ 4, 426 P.3d 034.

## III.     The Racketeering Act

**{8}**     New Mexico's Racketeering Act (the Racketeering Act), NMSA 1978, §§ 30-42-1 to -6 (1980, as amended through 2015), provides, in relevant part:

> C. It is unlawful for a person employed by or associated with an enterprise to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs by engaging in a pattern of racketeering activity. . . .
> D. It is unlawful for a person to conspire to violate the provisions of Subsection[] . . . C of this section.

Section 30-42-4. The Racketeering Act is based on the Racketeering Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. §§ 1961-1968 (2012), the federal statute criminalizing racketeering. *Loza*, 2018-NMSC-034, ¶ 12. "[A]ccordingly we look to federal cases interpreting RICO for guidance in interpreting our [Racketeering] Act." *Id.*; *see also State v. Rael*, 1999-NMCA-068, ¶ 11, 127 N.M. 347, 981 P.2d 280 (finding "federal decisions interpreting RICO . . . instructive").

**{9}**     In this case, Defendant was charged under Section 30-42-4(C), requiring, among other things, a "pattern of racketeering." The Racketeering Act defines a "pattern of racketeering" as "engaging in at least two incidents of racketeering with the intent of accomplishing any of the prohibited activities set forth in [the Racketeering Act,]" provided that the incidents occurred within a certain time frame not at issue here. Section 30-42-3(D). "Racketeering," in turn, is defined as "any act that is chargeable or indictable under the laws of New Mexico and punishable by imprisonment for more than one year, involving any of" twenty-five offenses, including trafficking in controlled substances. Section 30-42-3(A). Thus, to establish a "pattern of racketeering," the state must prove "two incidents of racketeering," often referred to as "predicate offenses" or "predicate acts." Section 30-42-3(D); *cf. State v. Clifford*, 1994-NMSC-048, ¶ 19, 117 N.M. 508, 873 P.2d 254 ("To be convicted under Section 30-42-4(A), [the d]efendants must have committed at least two punishable offenses that constitute racketeering." (citing § 30-42-3(D))); *State v. Crews*, 1989-NMCA-088, ¶ 47, 110 N.M. 723, 799 P.2d 592 (discussing the elements of racketeering). At issue in this case is whether the jury was instructed correctly on all the elements of the racketeering charges, and whether sufficient predicates exist to permit retrial.

## IV.     The District Court Did Not Err in Vacating the Racketeering Convictions for Instructional Error

**{10}**     "When the defendant has been found guilty, the court on motion of the defendant, or on its own motion, may grant a new trial if required in the interest of justice." Rule 5-614(A) NMRA.

When reviewing a [district] court's grant of a new trial, the appellate court must follow a two-step approach. First, this court must determine whether the grant of a new trial is based upon legal error. Second, this court must determine whether the error is substantial enough to warrant the exercise of the [district] court's discretion.

*State v. Danek*, 1993-NMCA-062, ¶ 20, 117 N.M. 471, 872 P.2d 889 (citations omitted), *aff'd as modified*, 1994-NMSC-071, 118 N.M. 8, 878 P.2d 326. "The [district] court's decision will only be reversed upon a showing of clear and manifest abuse of discretion." *Id.*

**{11}** For the reasons set forth below, the district court did not abuse its discretion in vacating the racketeering convictions because the jury instructions for those counts were erroneous.[3] *See, e.g.*, *State v. Parish*, 1994-NMSC-073, ¶ 4, 118 N.M. 39, 878 P.2d 988 ("Reversible error arises if . . . a reasonable juror would have been confused or misdirected."); *see also State v. Montoya*, 2013-NMSC-020, ¶ 14, 306 P.3d 426 ("In applying the fundamental error analysis to deficient jury instructions, we are required to reverse when the misinstruction leaves us with no way of knowing whether the conviction was or was not based on the lack of the essential element." (internal quotation marks and citation omitted)).

**{12}** *Racketeering.* As to racketeering, the jury was instructed as follows:

For you to find [D]efendant guilty of racketeering (conduct or participate) as charged in Count 1, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
1. There is an existence of an enterprise.
2. [D]efendant was associated with the enterprise.

---

[3] In vacating the racketeering convictions, the district court seems to have relied on inconsistent or irreconcilable verdicts as one basis for its decision. On appeal, Defendant does not rely on this as a basis for setting aside the racketeering convictions, or for acquittal or dismissal of the racketeering counts. Neither do we. *See State v. Leyba*, 1969-NMCA-030, ¶ 37, 80 N.M. 190, 453 P.2d 211 (holding that an acquittal that is "irreconcilable" with a conviction "does not require the conviction to be set aside as a matter of law"); *see also United States v. Powell*, 469 U.S. 57, 64 (1984) ("[W]here truly inconsistent verdicts have been reached, the most that can be said is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions[.]" (alteration, omission, internal quotation marks, and citation omitted)); *State v. Gallegos*, 2007-NMSC-007, ¶ 26, 141 N.M. 185, 152 P.3d 828 ("[W]e will affirm the [district] court's decision if it was right for any reason so long as it is not unfair to the appellant for us to do so.").

3. [D]efendant participated in the conduct of the affairs of the enterprise through a pattern of racketeering activity through the commission of two or more crimes.

4. [D]efendant engaged in at least two incidents of racketeering with the intent to commit a prohibited activity. . . .

5. [D]efendant was not acting under duress.

6. This happened in New Mexico on or between the 1st day of November, 2007 and the 15th day of May, 2012.

A subsequent instruction set out the Racketeering Act's definition of "racketeering," i.e., "any act that is chargeable or indictable under the laws of New Mexico . . . involving any of" the following offenses: (1) murder, (2) robbery, (3) kidnapping, (4) forgery, (5) larceny, (6) fraud, (7) embezzlement, (8) receiving stolen property, (9) bribery, (10) gambling, (11) illegal kickbacks, (12) extortion, (13) trafficking in controlled substances, (14) arson and aggravated arson, (15) promoting prostitution, (16) criminal solicitation, (17) fraudulent securities practices, (18) loan sharking, (19) distribution of controlled substances or controlled substance analogues, (20) a violation of the provisions of Section 4 of the Money Laundering Act, (21) unlawful taking of a vehicle or motor vehicle, (22) embezzlement of a vehicle or motor vehicle, (23) fraudulently obtaining a vehicle or motor vehicle, (24) receiving or transferring stolen vehicles or motor vehicles, and (25) altering or changing the serial number, engine number, decal or other numbers or marks of a vehicle or motor vehicle. *See* § 30-42-3(A).

**{13}**     The parties agree that this instruction was flawed because it failed to define the elements of each predicate offense that must be proved at trial, and that the error warranted vacating Defendant's conviction for racketeering (Count 1). We agree. New Mexico law is clear that "[t]he court must instruct the jury upon all questions of law essential for a conviction of any crime submitted to the jury." Rule 5-608 NMRA; *see Clifford*, 1994-NMSC-048, ¶ 12 (holding that a failure to instruct on an essential element may rise to fundamental error). As already provided, to convict a defendant of racketeering under Section 30-42-4(C), the jury must find that the defendant committed at least two predicate acts. *See Clifford*, 1994-NMSC-048, ¶ 19. To do so, it is necessary that the jury is instructed on the essential elements of the alleged predicate acts upon which racketeering is based. *See State v. Sloan*, No. S-1-SC-34858, dec. ¶ 6 (N.M. Sup. Ct. June 23, 2016) (nonprecedential) (holding "that the failure to instruct the jury on the essential elements of the predicate felony . . . amounts to fundamental error requiring the reversal of [the d]efendant's felony murder conviction and remand for a new trial on that charge"); *see also* UJI 14-2810 NMRA (requiring the jury to be instructed on the essential elements of the felony alleged to be the purpose of a conspiracy); *cf. United States v. Carrillo*, 229 F.3d 177, 184 (2d Cir. 2000) ("[C]onfusion and unfairness can arise from failure to charge the elements of the state law crimes constituting racketeering acts.").

**{14}**     Here, although the jury was given an instruction that listed twenty-five different predicate offenses, the jury was instructed on the essential elements of only two possible predicate offenses—trafficking in controlled substances and conspiracy to traffic in

controlled substances.[4] Because the instructions permitted the jury to convict Defendant for racketeering based on predicate offenses for which the jury had no elements, the instructions were erroneous. As such, Defendant's conviction for racketeering (Count 1) was properly vacated. *See Montoya*, 2013-NMSC-020, ¶ 14; *Parish*, 1994-NMSC-073, ¶ 4; *see also United States v. Latorre-Cacho*, 874 F.3d 299, 313 (1st Cir. 2017) (vacating a racketeering conviction where the jury was improperly instructed on the predicate offenses); *State v. Adkins*, 737 N.E.2d 1021, 1033-34 (Ohio Ct. App. 2000) (holding that "this is a case where the predicate offenses as submitted to the jury were *legally* flawed and thus, inadequate to support the conviction in this case under [Ohio's racketeering statute] as a matter of law").

**{15}** ***Conspiracy to Commit Racketeering.*** On appeal, the State argues that Defendant's conviction for conspiracy to commit racketeering should be reinstated because the district court incorrectly determined that the jury instruction was erroneous. We decline to do so. First, the State agreed to vacatur of Defendant's conspiracy to racketeer conviction partially on the ground that the instruction—which the State specifically requested—was erroneous. Generally, this Court "will not allow the State to invite error and then to complain of it." *State v. Dominguez*, 2008-NMCA-029, ¶ 13, 143 N.M. 549, 178 P.3d 834. Second, in addition to the error identified with the substantive racketeering instruction, we conclude that the conspiracy to racketeer instruction is flawed on other grounds.

**{16}** As to the conspiracy to commit racketeering instruction, the jury was instructed as follows:

> For you to find [D]efendant guilty of conspiracy to commit racketeering (conduct or participate) as charged in Count 2, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
> 1. [D]efendant and another person by words or acts agreed together to commit racketeering;
> 2. [D]efendant and the other person intended to commit racketeering;
> 3. [D]efendant was not acting under duress[;]
> 4. This happened in New Mexico on or between the 1st day of November, 2007 and the 15th day of May, 2012.

This instruction tracks the uniform jury instruction for conspiracy, inserting "racketeering" as the named felony that was the subject of the conspiracy. *See* UJI 14-2810. Although the intention of the conspiracy to commit racketeering instruction may have been to incorporate all the elements from the racketeering instruction pertaining to Count 1, it did not accomplish this.

---

[4] Defendant disputes whether conspiracy to commit drug trafficking may be a valid predicate offense. We address this argument in depth in Section V below.

**{17}** Instead, the jury instruction refers to "racketeering" alone. Although "racketeering" is a separate criminal offense (as charged in Count 1), it also is a *defined term* meaning any act involving any of twenty-five predicate offenses. It is not clear from the instruction in Count 2 whether "racketeering" refers to the separate criminal offense or to the defined term. If it is the latter, the instruction for Count 2 (conspiracy to commit racketeering) requires only that Defendant and another agreed to and intended to commit any one of the twenty-five predicate acts. This leads to the possibility that, for example, if the jury determined that Defendant committed one count of conspiracy to commit drug trafficking, the jury also could have convicted Defendant for conspiracy to commit racketeering on this basis *alone*. This is impermissible. The instruction omitted, among other things, any elements pertaining to an enterprise or a pattern of racketeering. *Cf. State v. Hughes*, 1988-NMCA-108, ¶ 39, 108 N.M. 143, 767 P.2d 382 (comparing requirements for trafficking conspiracy and racketeering conspiracy). And indeed the State acknowledges that the instruction for conspiracy to commit racketeering must contain such elements. Because the conspiracy to commit racketeering instruction permitted the jury to convict Defendant on the mere agreement to commit a single predicate act, Defendant's conviction for the same cannot stand. *See Montoya*, 2013-NMSC-020, ¶ 14; *Parish*, 1994-NMSC-073, ¶ 4.

**{18}** Defendant argues on appeal that to maintain a conviction for conspiracy to racketeer, the State must prove *she* committed two predicate acts, making no distinction between racketeering and conspiracy to racketeer. The State disagrees and, quoting *United States v. Nguyen*, argues instead that it need only prove that Defendant "either agree[d] to commit two predicate [racketeering] acts or agree[d] to participate in the conduct of the enterprise with the knowledge and intent that other members of the conspiracy would commit at least two predicate acts in furtherance of the enterprise." 255 F.3d 1335, 1341 (11th Cir. 2001). Because of the likelihood that Defendant on retrial will raise the same argument about the conspiracy to racketeer instruction she raises on appeal and because this issue is well-developed, we address this purely legal argument here.

**{19}** To the extent Defendant relies on *Hughes*, 1988-NMCA-108, for the proposition that the State must prove that she committed two predicate acts in order to convict her of conspiracy to racketeer, we conclude that *Hughes* does not so hold. The issue before the Court in *Hughes* was whether convictions for conspiracy to racketeer and conspiracy to traffic merged such that multiple sentences were barred. 1988-NMCA-108, ¶ 37. The statement on which Defendant relies—"[c]onspiracy to traffic by manufacturing can be proved by demonstrating one instance of manufacturing, while conspiracy to racketeer requires a showing of an enterprise and at least two predicate offenses"—was made in the context of comparing the elements of those two crimes. *Id.* ¶ 39. This Court, however, did not address whether a defendant must commit the predicate acts to be convicted of conspiracy to racketeer. *See id.* Hence, Defendant's reliance on *Hughes* is unavailing and does not establish the level of proof required for conspiracy to racketeer. *See Sangre de Cristo Dev. Corp. v. City of Santa Fe*, 1972-NMSC-076, ¶ 23, 84 N.M. 343, 503 P.2d 323 ("The general rule is that cases are not authority for propositions not considered.").

**{20}** We accordingly look to federal case law on point. *See Loza*, 2018-NMSC-034, ¶ 12; *Rael*, 1999-NMCA-068, ¶ 11. Both our Racketeering Act and RICO, the federal racketeering act, have substantially identical statutory requirements for conspiracy to commit racketeering. *Compare* § 30-42-4(D) ("It is unlawful for a person to conspire to violate the provisions of Subsections A through C of this section."), *with* 18 U.S.C. § 1962(d) ("It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."). The United States Supreme Court in *Salinas v. United States*, 522 U.S. 52 (1997), soundly rejected the idea that a defendant must have committed or agreed to commit two predicate acts to support a racketeering conspiracy conviction. *Id.* 64-66. Instead, *Salinas* held that a conviction for conspiracy to commit racketeering was supported where, even though the defendant "did not [commit or agree to commit the acts of racketeering], there was ample evidence . . . that [another member of the conspiracy] committed at least two acts of racketeering activity . . . and that [the defendant] knew about and agreed to facilitate the scheme." *Id.* at 66.

**{21}** In rejecting the defendant's argument that he could only be convicted of conspiracy to commit racketeering if he committed the predicate acts, the Supreme Court relied on general principles of conspiracy that "[t]he partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other." *Id.* at 63-64. We share these same principles in our conspiracy jurisprudence. *See State v. Armijo*, 1995-NMCA-115, ¶ 5, 120 N.M. 702, 905 P.2d 740 ("As a general rule, one who participates in a criminal venture is treated by the law as if he or she had committed all of the criminal acts of the other participants. . . . A conspirator is ordinarily responsible for the criminal acts of coconspirators in furtherance of the conspiracy."); *cf. State v. Gallegos*, 2011-NMSC-027, ¶ 45, 149 N.M. 704, 254 P.3d 655 (noting that "a conspiracy is complete when the agreement is reached" and "New Mexico does not require proof of an overt act" (alteration, internal quotation marks, and citations omitted)). We presume, as did the Supreme Court in *Salinas*, that our Legislature "intended to use the term [conspire] in its conventional sense," and that, contrary to Defendant's assertion, our Legislature did not intend to require the State to prove that a defendant committed or agreed to commit the predicate acts herself to sustain a conviction for conspiracy to commit racketeering. 522 U.S. at 64; *see also Citation Bingo, Ltd. v. Otten*, 1996-NMSC-003, ¶ 21, 121 N.M. 205, 910 P.2d 281 ("[W]e presume that the legislature was aware of existing statutory and common law and did not intend to enact a law inconsistent with existing law.").

**{22}** We find *Salinas* persuasive and adopt its holding here. We, however, do not endeavor to set out the essential elements required for a jury instruction on conspiracy to commit racketeering. The potential nuances of such an instruction are simply not before us in this appeal.[5]

---

[5] In addition to the new uniform jury instructions on conspiracy effective at the end of this year (UJIs 14-2810, 14-2810A, 14-2810B, and 14-6019B NMRA, http://www.nmcompcomm.us/nmrules/NMRuleSets.aspx), the substantial federal authority pertaining to the essential elements of conspiracy to commit racketeering may provide guidance to the district court and parties when crafting a jury instruction to fit the

## V.     The District Court Did Not Err in Ordering Retrial on the Racketeering Counts

**{23}**     Having determined that the instructions for both racketeering and conspiracy to commit racketeering were erroneous, and that the district court did not abuse its discretion in vacating Defendant's racketeering convictions, we next examine whether retrial is appropriate. Generally, when a conviction is vacated for trial error, including incorrect instructions, the defendant may be retried. *Lizzol*, 2007-NMSC-024, ¶ 14; *Clifford*, 1994-NMSC-048, ¶ 12 (reversing a conviction where the jury instructions omitted an essential element and remanding for a new trial on that count). If a conviction is vacated on insufficiency of evidence grounds, however, double jeopardy principles will bar retrial. *Lizzol*, 2007-NMSC-024, ¶¶ 13, 14.

**{24}**     Defendant maintains that only the trafficking counts, not the conspiracy to commit trafficking counts, can serve as predicate offenses. Because she was acquitted of two of the three trafficking charges, Defendant thereby maintains that only one possible predicate offense remains for retrial—and, thus, the State can never prove that she committed two predicate acts without her being retried for conduct on which she was acquitted. Viewed this way, Defendant asserts that the evidence is insufficient to support her racketeering convictions and the district court erred by denying her motion for acquittal or dismissal.[6]

---

evidence on retrial. For reference, we provide citation to pattern jury instructions adopted by several federal circuit courts. *See, e.g.*, 2B Fed. Jury Prac. & Instr. § 56:11 (6th ed.) (setting out pattern jury instructions on conspiracy to commit racketeering through a pattern of racketeering, and including model criminal jury instruction from the United States Court of Appeals for the Eighth Circuit); Mod. Crim. Jury Instr. 3rd Cir. 6.18.1962D (2018) (Third Circuit pattern instruction); Fed. Crim. Jury Instr. 7th Cir. 1962(d)[1] (2012 ed.) (Seventh Circuit pattern instruction); Pattern Crim. Jury Instr. 11th Cir. OI O75.2 (2016) (Eleventh Circuit pattern instruction). It should be noted that the federal circuits diverge, and in some cases conflict, on various elements required for conspiracy to commit racketeering. Our citation to these instructions in no way endorses the approach taken by any one of these circuits.

[6] As discussed above, the State need not prove that Defendant committed two predicate acts to be convicted of conspiracy to racketeer. Given this holding, we need only examine Defendant's arguments that insufficient predicate acts exist to permit retrial in the context of the racketeering charge, *not* the conspiracy to commit racketeering charge. Defendant has advanced no argument specific to the sufficiency of the evidence for the conspiracy to racketeer charge and we, therefore, do not address it. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not . . . guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)). There being instructional error on the conspiracy to commit racketeering charge and no corresponding insufficiency of evidence, retrial of Count 2 is not barred by double jeopardy. *See Lizzol*, 2007-NMSC-024, ¶¶ 13, 14.

**{25}** The fundamental premise underlying Defendant's argument is that the conspiracy to commit trafficking charges cannot serve as predicate acts. The State argues otherwise, although it admits that at trial it "operated from the false premise that a conspiracy to commit one of the [twenty-five] enumerated offenses . . . cannot serve as a predicate racketeering act." Without citation to any authority, Defendant argues that the errors of the first trial do not permit the State to rely on conspiracy to commit trafficking as a predicate for racketeering. We need not consider this unsupported argument. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.3d 1329. Regardless, our Supreme Court has recognized that a retrial is a *new* trial, and, for example, the district court on retrial is under no obligation to give the same jury instructions that were given at the first trial. *See State v. Torrez*, 2013-NMSC-034, ¶¶ 33-34, 305 P.3d 944 (rejecting argument that same instruction must be given on retrial because state failed to object to it at first trial); *cf. Trujillo v. City of Albuquerque*, 1998-NMSC-031, ¶ 41, 125 N.M. 721, 965 P.2d 305 ("The application of the law-of-the-case doctrine, however, is discretionary and flexible; it will not be used to uphold a clearly incorrect decision."); *State v. Jimenez*, 2007-NMCA-005, ¶ 22, 141 N.M. 106, 151 P.3d 67 ("[T]he [s]tate has already gotten a conviction, and so allowing the [s]tate to retry the case would not mean giving the [s]tate an opportunity to correct its past mistakes that led to an acquittal, which is one outcome that double jeopardy is designed to prevent.").

**{26}** Defendant further submits that "the district court did not allow the State to base their racketeering allegations on other conspiracies." Defendant, however, provides no citation to the record showing that the district court made such a ruling or operated under such a premise, and we will not comb the record to find such support. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments."). Moreover, the district court's order denying Defendant's motion for acquittal or dismissal demonstrates that the district court appears to have determined that conspiracy to commit drug trafficking could be a predicate act. Even if the district court did not so determine, we may affirm the district court's decision on this basis. *See Gallegos*, 2007-NMSC-007, ¶ 26 ("[W]e will affirm the [district] court's decision if it was right for any reason so long as it is not unfair to the appellant for us to do so.").

**{27}** Our appellate courts have not examined whether conspiracy to commit a racketeering act can serve a predicate offense under our Racketeering Act, so we again turn to federal case law. *See Loza*, 2018-NMSC-034, ¶ 12; *Rael*, 1999-NMCA-068, ¶ 11. Federal courts construing language in the RICO statute providing that "racketeering" is "any act . . . involving" certain listed offenses consistently have held that "[t]his language is certainly broad enough on its face to include conspiracies involving [those listed crimes]." *United States v. Weisman*, 624 F.2d 1118, 1123-24 (2d Cir. 1980) (holding that conspiracies to commit securities and bankruptcy fraud and drug related offenses can serve as predicates to a RICO charge), *abrogated in part on other grounds as recognized in Ianniello v. United States*, 10 F.3d 59 (2d Cir. 1993); *see also, e.g., United States v. Darden*, 70 F.3d 1507, 1524-25 (8th Cir. 1995) (narcotics conspiracy constitutes a RICO predicate); *United States v. Licavoli*, 725 F.2d 1040, 1045 (6th Cir. 1984) (conspiracy to

commit murder constitutes a RICO predicate); *United States v. Phillips*, 664 F.2d 971, 1015 (5th Cir. 1981) ("Conspiracy may properly be alleged as a predicate act of racketeering under RICO[.]").

**{28}** The Racketeering Act's definition of "racketeering" employs the same broad language as the RICO statute. Section 30-42-3(A) provides that "'racketeering' means *any act* that is chargeable or indictable under the laws of New Mexico and punishable by imprisonment for more than one year, *involving* any of the following cited offenses[,]" including "trafficking in controlled substances." (Emphasis added.) Just as the federal RICO statute, the plain language of our Racketeering Act is broad and expansive enough to include conspiracies as acts of racketeering. *See Weisman*, 624 F.2d at 1124 (holding that substantially identical language is "certainly broad enough on its face to include conspiracies"). Thus, consistent with the construction of RICO by federal courts, we conclude that conspiracy to commit trafficking in controlled substances may serve as a predicate offense for racketeering.

**{29}** In this case, the jury acquitted Defendant of three of the possible predicate offenses (two trafficking and one conspiracy to traffic), convicted her on one (conspiracy to traffic), and deadlocked on the remaining two (one trafficking and one conspiracy to traffic). The fact that the jury deadlocked on two of the possible predicates results in a mistrial, not an acquittal, of the racketeering charges. *See United States v. Gotti*, 451 F.3d 133, 137 (2d Cir. 2006) ("Assuming the other elements of the RICO charge were proved to the jury's satisfaction, lack of unanimity as to two predicate acts results in a hung jury and a mistrial, not a judgment of acquittal."); *cf. United States v. Vastola*, 899 F.2d 211, 222 (3d Cir. 1990) (reversing the district court's grant of acquittal to the defendant where the jury "found [the defendant] guilty of only one of the four predicate racketeering acts" and either deadlocked or acquitted on the remaining three predicate acts, but then convicted him for racketeering), *vacated on other grounds by Vastola v. United States*, 497 U.S. 1001 (1990). The district court, therefore, correctly denied Defendant's motion for acquittal or dismissal and ordered retrial of the racketeering charges.

## VI. The Court Will Not Address Arguments Pertaining To the Scope of Retrial

**{30}** The remaining arguments pertaining to the racketeering charges advanced by the parties relate to the scope of the retrial and not whether retrial should happen at all. These issues, however, are outside our review of the district court's order and should be addressed by the district court in the first instance. *See Apodaca*, 1997-NMCA-051, ¶ 16 (limiting the constitutional right to appeal a non-final order when "interests [are] of the greatest importance," such as "a defendant's right not to be subjected to a second trial for the same offense[, a violation of which] could not be remedied once the second trial has taken place"); *see also United States v. Wittig*, 575 F.3d 1085, 1096 (10th Cir. 2009) (declining to address the defendant's collateral estoppel arguments and stating that the court's "jurisdiction [under the collateral order doctrine] extends only to vindicate the right not to be tried at all, not the right to be tried in a particular way").

**{31}** For instance, the parties dispute whether the State on retrial can rely on uncharged conduct as proof of predicate offenses for the racketeering charges. Defendant invokes the compulsory joinder rule, Rule 5-203(A) NMRA, and the law-of-the-case doctrine in support of her argument that the State cannot rely on any uncharged predicates. The State, in turn, requests carte blanche permission to rely on any and all uncharged predicates, without even naming the offenses it intends to rely on at retrial. But the parties did not present these arguments to the district court and the district court did not decide this issue below. *See Graham v. Cocherell*, 1987-NMCA-013, ¶ 16, 105 N.M. 401, 733 P.2d 370 ("As an appellate court, we are . . . limited to a review of the questions that have been presented to and ruled on by the [district] court"). Moreover, the parties argue in the abstract before us. Without knowing, among other things, what predicate acts the State may attempt to rely on and whether Defendant had adequate notice of such predicates, our resolution of these matters require us to predict what might happen on retrial and to issue an advisory opinion based on that speculation. *See State v. Zamora*, 2005-NMCA-039, ¶ 28, 137 N.M. 301, 110 P.3d 517 (stating that "[t]he remaining issues raised by [the d]efendant may or may not arise on the retrial" and declining to consider them because "[a]ppellate courts do not give advisory opinions." (internal quotation marks and citation omitted)). This we will not do.

**{32}** For the foregoing reasons, we decline to address the parties' remaining arguments pertaining to the scope of retrial.

## THE CONSPIRACY TO COMMIT DRUG TRAFFICKING CONVICTION

**{33}** Defendant additionally appeals from her judgment and sentence on conspiracy to commit trafficking methamphetamine (Count 8) for sufficiency of the evidence. We first address whether this Court has jurisdiction to review Defendant's conviction on Count 8. Concluding we do, we determine that Defendant's conviction is supported by substantial evidence.

### I. This Court Has Jurisdiction to Review Defendant's Conviction for Conspiracy to Commit Trafficking

**{34}** The State contends that Defendant's appeal from her judgment and sentence should be dismissed "for want of a final order." The State argues that even though the district court entered a judgment and sentence on Count 8, the judgment did not dispose of all issues of law and fact to the fullest extent possible and, thus, is non-final.

**{35}** In criminal cases, "an appeal may be taken by the defendant to the supreme court or court of appeals . . . within thirty days from the entry of any final judgment[.]" NMSA 1978, § 39-3-3(A) (1972). "[T]he judgment is final for the purpose of appeal when it terminates the litigation on the merits and leaves nothing to be done but enforcement. A sentence must be *imposed* to complete the steps of the prosecution." *State v. Durant*, 2000-NMCA-066, ¶ 5, 129 N.M. 345, 7 P.3d 495 (alterations, internal quotation marks, and citation omitted). Generally, a "judgment is not considered final unless all issues of law and fact have been determined and the case disposed of by the [district] court to the

fullest extent possible"—termed the "last act" requirement of the finality rule. *Id.* ¶ 7 (internal quotation marks and citation omitted). We have, however, recognized exceptions to the "last act" requirement. Under the "sufficiently aggrieved" exception, our Court recognized that an appeal may be taken "when the consequences of the order that is not the last contemplated order in the case are sufficiently severe that the aggrieved party should be granted a right to appeal to alleviate hardship that would otherwise accrue if the appeal were delayed." *Id.* ¶ 8.

**{36}** In this case, the district court sentenced Defendant in May 2015 to a four-year term of incarceration, followed by a mandatory two-year term of parole, and immediately remanded Defendant to the New Mexico Department of Corrections. Given that Defendant has been convicted of a felony and incarcerated, there are immediate and definite consequences—both direct and collateral. *See id.* ¶¶ 9, 10. Defendant is "sufficiently aggrieved" to permit her immediate appeal from the judgment and sentence on Count 8.[7] Further, given Defendant already availed herself of the right to immediately appeal the district court's denial of her motion for acquittal on double jeopardy grounds, the usual countervailing arguments against piecemeal appeals simply are not at play in this case. *See State v. Candy L.*, 2003-NMCA-109, ¶ 6, 134 N.M. 213, 215, 75 P.3d 429, 431 (noting policy disfavoring piecemeal appeals). Accordingly, we conclude that the judgment and sentence entered on Count 8 is sufficiently final to be appealable, and we proceed to address Defendant's sufficiency of the evidence argument.

## II. Sufficient Evidence Supports Defendant's Conviction for Conspiracy to Commit Drug Trafficking

**{37}** "In reviewing the sufficiency of evidence used to support a conviction, we resolve all disputed facts in favor of the State, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *Id.* "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176 (alteration, internal quotation marks, and citation omitted).

**{38}** In determining whether substantial evidence exists, we review the evidence against the instructions submitted to the jury. *State v. Caldwell*, 2008-NMCA-049, ¶ 29,

---

[7] A number of jurisdictions regard a conviction and entry of a judgment and sentence on less than all counts of a multicount indictment as final and appealable notwithstanding that a retrial remains on other counts, treating the remaining counts as severed from the convicted counts. *See, e.g.*, *United States v. King*, 257 F.3d 1013, 1020 (9th Cir. 2001); *United States v. Abrams*, 137 F.3d 704, 709 (2d Cir. 1998); *State v. McCave*, 805 N.W.2d 290, 304 (Neb. 2011).

143 N.M. 792, 182 P.3d 175. Defendant was convicted of conspiracy to commit trafficking methamphetamine, contrary to NMSA 1978, Sections 30-31-20 (2006) and 30-28-2 (1979). To support Defendant's conviction, the State was required to prove beyond a reasonable doubt each of the following elements:

1. [D]efendant and another person by words or acts agreed together to commit trafficking methamphetamine by possession with intent to distribute;
2. [D]efendant and the other person intended to commit trafficking methamphetamine by possession with intent to distribute;
3. [D]efendant was not acting under duress[;]
4. This happened in New Mexico on or about the 8th day of April, 2012.

UJI 14-2810 (conspiracy). As required by the conspiracy instruction, the essential elements of trafficking methamphetamine by possession with intent to distribute (UJI 14-3104 NMRA) also were given. UJI 14-2810 use note 1. As to duress, the jury was instructed that "[i]f [D]efendant feared immediate great bodily harm to herself or another person if she did not commit the crime(s), and if a reasonable person would have acted in the same way under the circumstances, you must find [D]efendant not guilty." *See* UJI 14-5130 NMRA.

**{39}** The AZ Boys, the methamphetamine trafficking organization Defendant was alleged to be associated with, was run by Defendant's boyfriend, Robert (Bob) Chavez, and his brother Joe Chavez. The State's primary witness was Sonya Sanders, who had been Defendant's friend and later became an informant. Sanders' testimony was as follows: In February 2012, Defendant asked Sanders if she wanted to travel to Arizona "to make some money." Defendant explained to Sanders that Bob Chavez, Joe Chavez, and Defendant needed a driver because the previous driver "had gotten busted" for possession of methamphetamine. Sanders agreed and indicated that she knew that "driving" for Defendant meant transporting drugs.

**{40}** Sanders made a total of three trips with Defendant and Bob Chavez to Phoenix, Arizona and back to Alamogordo, New Mexico, which were the bases for the drug trafficking charges in the indictment. On the first trip in March 2012, Sanders traveled with Defendant and Bob Chavez to a house in Phoenix. Sanders made the return trip to Alamogordo in a rental truck, while Bob Chavez and Defendant drove back in another vehicle. Sanders did not perform well on the first drive back from Arizona. While driving, Sanders observed Bob Chavez hitting Defendant; Sanders believed Bob Chavez was taking out his anger about her driving on Defendant. Both Defendant and Joe Chavez gave Defendant advice on how to drive better in the future. Joe Chavez and Defendant paid Sanders in cash and methamphetamine for the first trip.

**{41}** After the first trip, Defendant and Bob Chavez arranged to buy a truck for Sanders, "to go back and forth to Arizona with them." About ten days later, Sanders received a call from Defendant who instructed Sanders that "we're gonna leave in a couple hours, get ready." They stayed in Phoenix for several days. Despite Bob Chavez's

displeasure, Defendant ensured that they left back to Alamogordo in time for Sanders to spend Easter (April 8, 2012) with her children. As they prepared for the return trip, Sanders observed Defendant and Bob Chavez make preparations with a tire on a tarp, and at one point, Defendant handed Sanders some methamphetamine to help her stay awake for the return trip. Sanders later observed the tire had been loaded onto her truck. After getting back to Alamogordo, Defendant "was really happy . . . [because] for the first time in a long time," they had someone who was "able to drive." Defendant and Bob Chavez compensated Sanders with a combination of methamphetamine and cash.

**{42}** Sometime after the second trip, Sanders was stopped pursuant to a warrant for selling methamphetamine. Sanders agreed to cooperate with law enforcement to help bring down the AZ Boys. In May 2012, Sanders participated in a third trip to Arizona while cooperating with law enforcement. During this trip, Sanders saw bruising on Defendant and observed Bob Chavez abusing Defendant; at one point, Sanders asked Defendant to leave with her but Defendant would not go. Law enforcement ultimately recovered four pounds of methamphetamine from the spare tire of the truck Sanders had driven back from Arizona on the third trip.

**{43}** At trial, Defendant testified on her own behalf and raised the defense of duress. Although Defendant claimed not to have knowledge about or involvement in the AZ Boys organization, some of Defendant's testimony corroborated Sanders' testimony. For instance, Defendant testified she had "invited [Sanders] to go to Phoenix" at Bob Chavez's direction, although Defendant claimed not to know why. Defendant spoke with Sanders about making a second trip to Phoenix. Defendant advised Sanders "to be ready," and to try not to make any mistakes. Defendant testified that she had given Sanders methamphetamine when they were in Phoenix on the second trip to help Sanders stay awake for the drive back. Defendant testified that she knew Bob Chavez "was selling drugs," but claimed not to know about the "interstate methamphetamine trafficking organization" until the second trip with Sanders. In reference to the tires that were used in the second and third trips, Defendant added that "any person in their right mind would know what was going on."

**{44}** Defendant testified to the abusive and controlling nature of her relationship with Bob Chavez and that she feared for her life if she left him. Defendant, however, acknowledged that she and Bob Chavez had previously broken up, and she had received family support during the breakup. She also acknowledged that she was able to go to her mother's home, which was close to the local police station, and that she had family members who were retired law enforcement.

**{45}** The foregoing evidence, when viewed in the light most favorable to the verdict, is sufficient to support the conviction for conspiracy to commit trafficking. There was testimony that the second trip from Phoenix to Alamogordo happened on or about April 8, 2012, meeting the fourth element. There was significant circumstantial evidence that Defendant agreed with one or more individuals to commit trafficking methamphetamine and intended to commit this offense, meeting the first and second elements. *See State v. Montoya*, 2015-NMSC-010, ¶ 53, 345 P.3d 1056 ("Just because the evidence supporting

the conviction was circumstantial does not mean it was not substantial evidence." (internal quotation marks and citation omitted)); *State v. Pacheco*, 2008-NMCA-131, ¶ 46, 145 N.M. 40, 193 P.3d 587 (observing that "conspiracy is rarely susceptible of direct proof and that circumstantial evidence is sufficient to support a conspiracy conviction"); *State v. Donaldson*, 1983-NMCA-064, ¶ 25, 100 N.M. 111, 666 P.2d 1258 (stating that "possession of a large quantity of a controlled substance, inconsistent with personal use, is sufficient proof of trafficking"). Defendant's contention on appeal that she merely submitted or acquiesced to the conduct of others simply is not borne out when viewing the evidence in the light most favorable to the verdict. Further, the jury heard testimony that Defendant exerted some influence over Bob Chavez during the second trip and had options available to her other than committing the offense. As such, a rational jury could have determined beyond a reasonable doubt that Defendant did not act under duress. Therefore, the evidence was sufficient to establish beyond a reasonable doubt that Defendant committed each element of conspiracy to commit trafficking methamphetamine (Count 8).

## CONCLUSION

**{46}** We affirm the district court's order vacating the racketeering convictions, denying Defendant's motion for acquittal or dismissal, and permitting retrial of the racketeering counts. Having determined that substantial evidence supports Defendant's conviction for conspiracy to commit drug trafficking, we also affirm Defendant's conviction for the same.

**{47}   IT IS SO ORDERED.**

_____
**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

_____
**M. MONICA ZAMORA, Judge**

_____
**DANIEL J. GALLEGOS, Judge**